Legal Opinion: GME-0009


Index: 9.207
Subject: MCS Disorder and Environmental Illness as Handicaps

March 5, 1992

MEMORANDUM FOR: Frank Keating, General Counsel, G

FROM: Carole W. Wilson, Associate General Counsel for
     Equal Opportunity and Administrative Law, GM

SUBJECT: Multiple Chemical Sensitivity Disorder and
     Environmental Illness as Handicaps

This memorandum analyzes whether Multiple Chemical
Sensitivity Disorder ("MCS") and Environmental Illness ("EI") are
or can be "handicaps" within the meaning of subsection 802(h) of
the Fair Housing Act (the "Act"), 42 U.S.C.  3602(h), and the
Department's implementing regulation, 24 C.F.R.  100.201 (1991).

In sum, we conclude that MCS and EI can constitute handicaps
under the Act.  Our conclusion is consistent with the weight of
both federal and state judicial authority construing the Act and
comparable legislation, the Act's legislative history, as well as
the interpretation of other Federal agencies, such as the Social
Security Administration and the Department of Education,
construing legislation within their respective domains.  The
Civil Rights Division of the Department of Justice has also
informed us that it believes MCS and EI can be handicaps under
the Act.  In addition, HUD has consistently articulated this
position, and FHEO agrees with our conclusion.

I. Ordinary Allergies, Unlike MCS and EI, Generally Are Not
Handicaps

Before turning to whether MCS and EI can fit within the
definition of "handicap" under the Act, it is useful to define
MCS and EI and distinguish these conditions from ordinary
allergies.  This memorandum uses the term MCS to refer to a
condition that causes a person to have severe hypersensitive
reactions to a number of different common substances.  This
memorandum uses the term EI to refer more generally to a
condition that causes a person to have any type of severe
allergic reaction to one or more substances.

At least one court has accepted the following definition for
MCS:

 A n acquired disorder characterized by recurrent
symptoms, referable to multiple organ systems,
occurring in response to demonstrable exposure to many
chemically unrelated compounds at doses far below those
established in the general population to cause harmful
effects.  No single widely accepted test of physiologic

function can be shown to correlate with symptoms.

Ruether v. State, 455 N.W.2d 475, 476 n.1 (Minn. 1990) (quoting Cullen, The Worker with Multiple Chemical Sensitivities: An Overview, 2 Occupational Medicine: State of the Art Reviews 655, 657 (1987)).
Ordinary allergies, as opposed to MCS and EI, generally would not constitute a "handicap" because, in most cases, ordinary allergies do not substantially limit a major life activity. Indeed, the National Academy of Sciences ("NAS") defines MCS to exclude reactions to more common types of allergens. Thus, while we conclude that MCS or EI can be handicaps under the Act, ordinary allergies generally would not be such.

The practical difference between a person with MCS and one with ordinary allergies is described in a decision which held that MCS is a "disability" under the Social Security Act:

Everyone knows someone with an allergy. If allergic to eggs, don't eat eggs and you will be fine. If you do eat an egg, have some Kleenex available. But the plaintiff with MCS represents the extreme. These extreme cases in the past were either ignored, sent to a psychiatrist, let die, or treated for other ailments. It has only been recently that the medical profession itself has recognized the degree of the problem and the numbers of persons involved....

... A severe exposure of the plaintiff to the elements to which she reacts causes us to reach not for a Kleenex box but for the telephone to summon an ambulance and this has happened in the past.

Slocum v. Califano, No. 77-0298, slip op. (D. Haw. Aug. 27, 1979).

Ordinary allergies are like a host of other common characteristics, which, although they may pose challenges to individuals with the characteristic, do not constitute handicaps because they either are not impairments or do not substantially impair major life activities. Judicial or other authority have found that the following characteristics do not constitute handicaps:

- left-handedness is not an impairment under Sections 501 and 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. 791 and 794, because it is physical characteristic, not a impairment - Torres v. Bolger, 781 F.2d 1134, 1138 (5th Cir. 1986), aff'g, 610 F. Supp. 593 (N.D. Tex. 1985) (ruling that left-handedness is not an impairment and does not substantially impair major life activities);

- shortness is not a disability or impairment under Wisconsin employment discrimination law - American Motors Corp. v. Labor and Industry Review Commission, 8

    F.E.P. Manual 421:661 (No. 82-389) cited in Torres v. Bolger, 610 F. Supp. 593, 596 (N.D. Tex. 1985) ;

- "For purposes of the definition of 'disability' in section 3(2), homosexuality and bisexuality are not impairments and as such are not disabilities under this Act." - Section 511 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12211.

II. MCS and EI Generally Meet the Statutory and Regulatory Definition of Handicaps

Subsection 802(h) of the Act defines "handicap" as follows:

(h) "Handicap" means, with respect to a person --

    (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

    (2) a record of having such an impairment, or

    (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

As under the Rehabilitation Act's definition of handicap, 29 U.S.C. 706(6), a definition substantially similar to that in the Act, the determination of whether any particular condition constitutes a "handicap" necessarily involves a case by case determination of all facts and circumstances relevant to whether the condition meets the Act's definition. Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986) (case brought under the Rehabilitation Act); E.E. Black, Ltd. v. Marshall, 497 F. Supp. 1088, 1100 (D. Haw. 1980) (same). Those with MCS or EI generally attempt to meet the definition by virtue of paragraph (1) of the Act's definition, i.e., by maintaining that their condition constitutes a physical impairment which substantially limits one or more of their major life activities. As shown below, our understanding of the usual effects of MCS and EI is that persons with these conditions generally meet the Act's definition of persons with a "handicap."

A. Physical or Mental Impairment

The Act does not define its term, "physical or mental impairment," but the Department's regulations define that term as follows:

"Physical or mental impairment" includes:

    (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular;

reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine; or

    (2) Any mental or psychological disorder, such as ... emotional or mental illness .... The term "physical or mental impairment" includes, but is not limited to, diseases and conditions as ... visual, speech and hearing impairments, ... and emotional illness ....

24 C.F.R. 100.201.

As discussed at more length, infra, at Parts III, V, and VI, courts and administrative agencies (including HUD) have found persons with MCS and EI to have a physiological disorder or condition, which, upon exposure to certain substances, causes the person to suffer substantial impairment of various body systems. Listed below are some of the systems that we understand can be affected, as well as some of the ways each can be affected:

1. neurological - blurred vision and black spots, ear ringing, incoherent speech, and seizures;

2. musculoskeletal - muscle aches, fatigue, muscle spasms;

3. special sense organs - blurred vision, ear ringing;

4. respiratory (including speech organs) - incoherent speech, shortness of breath;

5. hemic - unusually high T-cell count;

6. digestive - pancreas damage;

7. immunological - extreme sensitivity to various chemicals which can be life threatening.

B. Major Life Activities

The Act does not define the term "major life activities," but HUD regulations define it as follows:

    "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

24 C.F.R. 100.201.

People with MCS and EI can have one or more major life activities affected by their condition. We understand these to include, but not be limited to:

1. working - such persons may be disabled under the Social Security Act, 42 U.S.C. 416(i)(1);

2. speaking - incoherent speech when exposed to chemicals;

3.  breathing - extreme shortness of breath when exposed to chemicals;

4.  caring for themselves; performing manual tasks - may be substantially impaired by chronic fatigue and the need to avoid exposure, they are often bed-ridden;

5.  walking - loss of muscle control;

6.  seeing - blurred vision and black spots;

7.  hearing - ear ringing.

8.  learning - blurred vision, ear ringing, seizures, and chronic fatigue, all of which may substantially impair a person's ability to learn.

C.  Substantially Limited

Neither the Act itself nor HUD's implementing regulations define what it means to be "substantially limited" in a major life activity. Case law, however, provides some guidance.

The Fourth Circuit in Forrisi v. Bowen, 794 F.2d 931 (4th Cir. 1986), ruled that, under the Rehabilitation Act, in order for an impairment to substantially limit a major life activity, "the impairment must be a significant one." Id. at 933-34.

E.E. Black, Ltd. v. Marshall, 497 F. Supp. 1088 (D. Haw. 1980) ("Black"), ruled that a person who is disqualified from employment in his chosen field has a substantial handicap in employment and is substantially limited in his major life activity of working. Id. at 1099. In contrast, where a person is disqualified only from certain subfields of work, the determination of whether the impairment is substantial must be viewed in light of certain factors. Id. at 1101-02. These factors are:

1.  the number of types of jobs from which the impaired individual is disqualified;

2.  the geographical area to which the individual has reasonable access to find alternative employment; and

3.  the individual's own job expectations and training.

Id.

The Sixth Circuit in Jasany v. United States Postal Service, 755 F.2d 1244 (6th Cir. 1985), in discussing the "substantially limiting" requirement, stated that " a n impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." Id. at 1249 note 3.
Federal agencies appear to have adopted a similar approach to the "substantially limited" requirement, as have state

courts.

Persons with MCS and EI may be substantially limited in major life activities due to their handicap. For such persons, exposure to a variety of common substances may cause them significant limitations to their major life activities, such as those listed, supra, at Part IIB. Moreover, due to the frequency that ordinary living normally brings people into contact with the commonly found substances to which persons with MCS and EI typically react, persons with these disabilities may be severely constrained in their daily living and must make major adjustments to avoid exposure. Since it is critical that people with MCS and EI minimize their exposure to common substances found in or near most housing facilities, they generally face a significantly limited choice of housing.

III. Case Precedent Recognizes MCS and EI as Handicaps

The weight of judicial precedent supports the conclusion that MCS and EI can be handicaps.

A. Federal Case Law Recognizes MCS and EI as Handicaps

Vickers v. Veterans Administration, 549 F. Supp. 85, 86-87 (W.D. Wash. 1982), held that a Veterans Administration ("VA") employee who was hypersensitive to tobacco smoke was handicapped under the Rehabilitation Act. The court ruled that the ability to work where one will be subject to an ordinary amount of smoke is a major life activity. Id. at 87. The court specifically found that the plaintiff had a physical impairment that substantially limited his ability to work in an environment that was not completely smoke free, and thus, he was handicapped.

Rosiak v. Department of the Army, 679 F. Supp. 444 (M.D. Pa. 1987), aff'd, 845 F.2d 1014 (3d Cir. 1988), held that a carpentry worker who was hypersensitive to "hydrocarbon-type fumes or dust," including those from contact cement, was handicapped under the Rehabilitation Act due to his hypersensitivity.

Kouril v. Bowen, 912 F.2d 971, 974 (8th Cir. 1990), held that a woman with MCS was disabled under the Social Security Act, 42 U.S.C. 416(i)(1). She suffered numbness in the legs, dizziness, light headedness, headaches, nausea, and various skin rashes and sores when exposed to common chemicals, such as ink, perfume, tobacco smoke, photocopier odors, engine exhaust fumes, new carpet, new clothes, and hydrocarbons. The court found her "complex allergy state" to require substantial restrictions in her daily activities and interfere with her ability to engage in substantial gainful activity. 912 F.2d at 976.

Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980), involved a truck driver, diagnosed as having severe allergies to environmental pollutants and bronchial asthma, and, who, as a consequence, suffered disabling respiratory attacks. The court ruled that he was disabled from substantial gainful activity under the Social Security Act, and, thus, his widow was entitled to collect his Social Security disability benefits.

On the other hand, Lawson v. Sullivan, 1990 U.S. Dist. LEXIS 18758 (N.D. Ill. 1990) (magistrate's decision), adopted, 1991 U.S. Dist. LEXIS 1560 (N.D. Ill. 1991), affirmed a decision of the Secretary of Health and Human Services, which denied the claimant Social Security disability benefits based on a failure to produce adequate, objective, clinical evidence supporting her complaints of incapacitating migraine headaches, allegedly brought about by exposure to various common chemicals.

B.   State Case Law Recognizes MCS and EI as Handicaps

Pennsylvania, California, and Ohio state courts have interpreted their state civil rights statutes prohibiting discrimination against the handicapped to apply to persons with MCS and EI.  We have been unable to find any state court holding to the contrary.

Most noteworthy, because it involves housing discrimination, is a case interpreting the Pennsylvania Human Relations Act ("Pennsylvania Act"). Lincoln Realty Management Co. v. Pennsylvania Human Relations Commission, 598 A.2d 594 (Pa. Commw. 1991) ("Lincoln").  In that case, a Pennsylvania trial court affirmed, in part, the decision of the Pennsylvania Human Relations Commission.  The court affirmed, without analysis of this issue, the finding that the plaintiff, a tenant unable to tolerate the presence of various chemical compounds (including certain pesticides and herbicides), was handicapped under the Pennsylvania Act.  Id. at 597, 601.

The California Court of Appeals held in County of Fresno v. Fair Employment and Housing Commission of the State of California, 226 Cal. App. 3d 1541, 1550, 277 Cal. Rptr. 557, 563 (Cal. App. 5th Dist. 1991), that the state human relations commission did not abuse its discretion in determining that hypersensitivity to tobacco smoke, was a handicap under the California Fair Employment and Housing Act ("California Act"). While this case involved employment discrimination, the California Act's definition of handicap applies equally to housing.  Thus, the holding that hypersensitivity to tobacco smoke qualifies as a handicap would apply in housing discrimination cases also.

In Kallas Enterprises v. Ohio Civil Rights Commission, 1990 Ohio App. LEXIS 1683 (Ohio Ct. App. May 2, 1990), the Court of Appeals of Ohio, citing Vickers, discussed, supra, at 10-11, ruled that "occupational asthma" and "a hypersensitivity to  rustproofing  chemicals," are handicaps within the meaning of the Ohio Civil Rights Act ("Ohio Act"), Ohio Rev. Code   4112 et seq.  The court affirmed the trial court's ruling that the plaintiff was illegally discharged because of his handicap and affirmed the trial court's reinstatement order.

In Kent State University v. Ohio Civil Rights Commission, 64 Ohio App. 3d 427, 581 N.E.2d 1135 (1989), a different district of the Court Appeals of Ohio held in favor of a person with laryngeal stridor with laryngospasm, diagnosed as a condition

making her unable to breath when subjected to pesticides, cleaning solutions, natural gas, asphalt, auto exhaust, cigarette smoke, hair spray, cosmetics, rubber products, petrochemicals, and other common substances. 581 N.E.2d at 1137. The court found that her condition was a handicap under the Ohio Act.

IV. Legislative History Supports the Conclusion that MCS and EI Can Be Handicaps

The Act's legislative history also demonstrates that Congress intended that the Act's definition of handicap be broad enough to include MCS and EI. Congress intended that the term "handicap," as used in the Act, be interpreted consistently with judicial interpretations of the term "handicap," as used in the Rehabilitation Act. In the preamble to the regulations implementing the Act, HUD noted "the clear legislative history indicating that Congress intended that the definition of 'handicap' be fully as broad as that provided by the Rehabilitation Act." 24 C.F.R. Subtitle B, Ch. 1, Subch. A, App. 1 at 704 (1991). To support this conclusion, the preamble cited portions of the House Report and floor debate on the Act which reflected Congress's desire that the two definitions be interpreted consistently. Before Congress passed the Fair Housing Amendments Act, lower federal courts had interpreted the Rehabilitation Act to cover MCS and EI as handicaps.

Statutory construction principles lead us to conclude that, because Congress used substantially the same definition of handicap in the Act as it did in the Rehabilitation Act, Congress intended chemical hypersensitivity to be a handicap under the Act, as courts at that time had determined it to be under the Rehabilitation Act. It is a generally accepted principle of statutory construction that where the judiciary has given "contemporaneous and practical interpretation" to "an expression" contained in a statute, and the legislature adopts the expression in subsequent legislation, the judicial interpretation is "prima facie evidence of legislative intent." This principle "is based on the theory that the legislature is familiar with the contemporaneous interpretation of a statute." Sutherland Stat. Const. 49.09 (4th ed. 1984) at 400. The Supreme Court has applied this principle to interpreting civil rights statutes. Cannon v. University of Chicago, 441 U.S. 677 (1979) ("Cannon") and Lorillard, A Division of Loew's Theatres, Inc. v. Pons, 434 U.S. 575 (1978) ("Lorillard").

In addition, the Act's legislative history generally demonstrates that Congress intended that the Act's definition of handicap be interpreted broadly. During consideration of the Fair Housing Amendments Act, Congress considered proposals to limit the category of "handicaps" to more traditionally recognized ones, such as those affecting only sight, hearing, walking, or living unattended; Congress rejected those proposals. For example, Senator Hatch proposed a more restrictive definition of the term handicap in S. 867, 100th Cong., 1st Sess. See Fair Housing Amendments Act of 1987: Hearings on S. 558 Before the Subcomm. on the Constitution of the Senate Comm. on the Judiciary, 100th Cong., 1st Sess. 520-22, 523 (1987) (statement

of Bonnie Milstein, former Deputy Assistant General Counsel for Civil Rights in Departments of HEW and HHS). By adopting the definition it did, Congress rejected the more restrictive proposals. Interpreting the Act's definition to include persons with MCS and EI is consistent with that Congressional intent.

V.   Other Federal Agencies Recognize MCS and EI as Handicaps

At least two other Federal agencies, the Social Security Administration ("SSA") and the Department of Education ("DOE"), recognize that MCS and EI can be handicaps. In addition, the Civil Rights Division of the Department of Justice has informed us that it believes MCS and EI can be handicaps under the Fair Housing Act.

As discussed, supra, at Part IIIA, two Circuit Courts of Appeals have ruled that MCS and EI are "disabilities" under the Social Security Disability Act. An increasing number of SSA administrative law judges are "becoming aware" of these disabling conditions. Matthew Bender, Social Security Practice Guide, vol. 2, 14.03 8 at 14-49 (1991). If a person is disabled under the Social Security Act, a fortiori, he or she is handicapped under the Fair Housing Act, because the former definition is a more limited definition than the latter.

DOE has issued two agency letters of finding under the Rehabilitation Act concluding that MCS and EI can be handicaps. In San Diego (Cal.) Unified School District, 1 National Disability Law Reporter ("NDLR") para. 61, p. 311 (May 24, 1990), DOE concluded that a school district violated the Rehabilitation Act by refusing to reasonably accommodate a school bus driver who was chemically sensitive to petrochemical fumes. In that case, the school district refused to allow the driver to wear a respirator while driving. DOE concluded that the bus driver was handicapped and that the accommodation he requested was reasonable. In Montville (Conn.) Board of Education, 1 NDLR para. 123, p. 515 (July 6, 1990), DOE concluded that a guidance counselor with MCS was handicapped under the Rehabilitation Act. DOE concluded, however, that the school district had provided reasonable accommodations to the counselor.

In addition, the Merit Systems Protection Board ("MSPB") has suggested that, at least in some circumstances, severe chemical sensitivities could be a handicap under the Rehabilitation Act.

VI. HUD's Prior Interpretations Have Recognized That MCS and EI Can Be Handicaps

On several occasions, HUD, including OGC and FHEO, has recognized that MCS and EI can be handicaps under Section 504 of the Rehabilitation Act and subsection 802(h) of the Fair Housing Act. OGC, Fair Housing Division, issued a determination, authorized by the General Counsel, in another fair housing case, Corcelli v. Gilbane Properties, Inc., (Case Nos. 01-90-0255-1-5, 01-90-0512-1) (Dec. 11, 1990) ("Corcelli") (Attachment A) stating that the complainant, a person suffering from environmental illnesses immune dysfunction syndrome and chronic fatigue, was

handicapped under the Act. In Corcelli, medical evidence substantiated that the complainant was hypersensitive to common chemicals such as pesticides, petroleum products, perfumes, exhaust fumes, fresh paint, pine, soaps, chemical spraying of lawns, and most strong odors. When exposed to these substances, her reaction was severe or even life threatening. Based on this information, HUD found that the complainant's condition was a handicap and that the Act's provision on reasonable accommodations was fully applicable. Corcelli at 3.

Even before OGC issued the Corcelli determination, HUD had stated that MCS was a handicap under Section 504 of the Rehabilitation Act, entitling those with the disability to reasonable accommodations. See Oct. 26, 1990 letter from Timothy L. Coyle, Assistant Secretary for Legislation and Congressional Relations to Senator Frank R. Lautenberg (Attachment B). Since Corcelli, HUD has continued to reaffirm its position that MCS and EI are or can be handicaps. For example, the FHEO provided all regional FHEO Directors a draft technical guidance memorandum dated June 6, 1991, stating that persons disabled by MCS and EI are handicapped within the meaning of the Fair Housing Act and Section 504. See Draft Technical Guidance Memorandum (Attachment C). In addition, HUD's recent report to Congress, written by the Assistant Secretary for FHEO and cleared by the Secretary, listed, as a handicap discrimination case, one involving the "refusal to delay fumigation to permit a temporary absence for an individual with chemical sensitivities." Report to the Congress Pursuant to Section 808(e)(2) of the Fair Housing Act (1990): The State of Fair Housing (Nov. 1991) at 5 (Attachment D).

As explained above, persons with MCS and EI generally will meet the statutory and regulatory definitions of persons with a "handicap." In addition, HUD's interpretation to date is fully consistent with case precedent, the interpretations of other Federal agencies, and the Act's legislative history.

VI. Conclusion

MCS and EI can be handicaps under the Act. This position is consistent with the statutory language, the weight of judicial authority, the interpretation of other Federal agencies, and the Act's legislative history. HUD also has been consistent in articulating this position on prior occasions. Thus, HUD's current interpretation seems correct, and there appears to be no compelling reason to change it now.

Attachments