Loan Number 10097572

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)
Including Prepayment Penalty

**NOTICE TO BORROWER**
Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement (Ore Rev Stat §82.160; Or Admin R §441-870-0040.)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| 02/10/2004 | IRVINE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

13865 SW WALKER ROAD, Beaverton, OREGON 97005
[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 176,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.990% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O.Box 512809, Los Angeles, CA 90051-5128 or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,169.76 . This amount may change.

#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Date(s)
The interest rate I will pay may change on the 1st day of March, 2006 and every 6th month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as [published in] the Wall Street Journal. The most recent Index figure available as of the date 45 days before each [Change] Date is called the "Current Index."

[If] the Index is no longer available, the Note Holder will choose a new index that is based upon comparable [infor]mation. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding five and one-quarter percentage points ( 5.250% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 9.990% or less than 6.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 12.990%. My interest rate will never be less than 6.990%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.



**A high resolution close-up photo at 25% its full image size of Denise Subramaniam's initials on Page 3 of LNV's purported "original" note is shown here. A high resolution close-up of this same initial at approximately 70% of its full size is on page 6 of this document.**

ECURED NOTE

is a uniform instrument with limited variations in some jurisdictions. In addition to the protections Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), same date as this Note, protects the Note Holder from possible losses that might result if I do not keep ses that I make in this Note. That Security Instrument describes how and under what conditions I may ired to make immediate payment in full of all amounts I owe under this Note. Some of those conditions as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)  _____ (Seal)
DENISE SUBRAMANIAM      -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                    -Borrower

[Sign Original Only]



**This high resolution close-up photograph of Denise Subramaniam's initials on Page 3 of LNV's purported "original" note shows evidence of digital alteration with a graphic software application like Adobe PhotoShop©**

**At this close-up high resolution you can clearly see the black outline surrounding the blue color on the purported "original" Subramaniam initials.**



**The black outline around the letters is evidence of digital altering of a black and white photocopy by filling the inside of the lines that make up the signature with a blue color then printing the color enhanced digital alteration (forgery) with a color printer. This almost iridescent shade of blue is not commonly found in pen ink.**

**Additional evidence that LNV's purported "original" Note is a forgery is apparent in high resolution photographs of page 4 where the pressure indent can be seen on the back of the page with the Dana Lantry signature. No such pressure indent exists on the back side of any other signature or initial on the instrument.**

**A pressure indent on the signature is difficult to capture in a photo. The print from the opposite side of the page shows through too but the pressure indent is seen by the subtle shadows above and below the pen loop where the arrow points. At the angle that the paper was held the lighting catches on the top (is lighter) and creates a shadow below the pen stroke. It is very subtle in the photo but was completely visible with the naked eye.**



**On the following page is the back side of the page with my signature held at about the same angle. You can see some of the print from the opposite side of the page showing through like you see with the lines and print around the Dana Lantry signature. But no pressure indent can been seen.**



**My signature is visible here showing through from the other side. But there are no shadows from a pressure indent so you don't see it as clearly as with the reverse side of the Dana Lantry signature**

**The most likely reason this one signature has a pressure indent when no others do is that a Beal employee made the Dana Lantry signature recently with a pen – sometime shortly before November 2014 when LNV filed its foreclosure complaint but after May 2013 when Judge Mosman dismissed Subramaniam's case against LNV, Beal, MGC, Litton, GMAC-RFC, Homecomings, JPMorgan Chase as successor to Bear Stearns, EMC and others.**