Written Testimony of
The Honorable M. Margaret McKeown
United States Court of Appeals for the Ninth Circuit
Chair, Committee on Codes of Conduct
of the Judicial Conference of the United States

appearing on behalf of the
Judicial Conference of the United States

before the House Committee on the Judiciary
Subcommittee on Courts and Competition Policy

Hearing on:
Examining the State of Judicial Recusals After *Caperton v. A.T. Massey*

December 10, 2009

Written Testimony of The Honorable M. Margaret McKeown
on behalf of the
Judicial Conference of the United States

before the House Committee on the Judiciary
Subcommittee on Courts and Competition Policy

Hearing on:
Examining the State of Judicial Recusals After *Caperton v. A.T. Massey*

December 10, 2009

Good afternoon and thank you for inviting me to testify. I am Margaret McKeown. I serve as a judge on the United States Court of Appeals for the Ninth Circuit, and I chair the Committee on Codes of Conduct of the Judicial Conference of the United States. I am here on behalf of the Judicial Conference to provide a brief overview of the recusal standards that apply to federal judges, to discuss the extensive framework by which the judiciary seeks to abide by the recusal rules to accord each case a fair and impartial forum, and to explain the role that the Codes of Conduct Committee plays in advising judges on ethics issues, including recusal.

**Recusal Standards for Federal Judges**

Judicial recusal (often also referred to as "disqualification") is formally governed by two statutes: 28 U.S.C. § 144 and 28 U.S.C. § 455(a). Section 144 narrowly permits a party to file an affidavit to attempt to establish personal bias or

prejudice of a district court judge. Section 455(a) is broader, addressing both the appearance of impartiality and other categories for disqualification, and it therefore functions as the primary recusal statute. In addition to following these recusal statutes, as well as additional ethics statutes that apply to the judiciary specifically and other ethics statutes that apply to public servants generally, the Judicial Conference imposes further ethical constraints through the Code of Conduct for United States Judges. The Code of Conduct both parallels and expands upon the recusal statutes.

The language of Section 455 is mirrored in Canon 3C of the Code of Conduct. Section 455 and Canon 3C provide five specific situations in which recusal is mandatory; the judge must disqualify himself or herself from the case and the parties may not waive recusal in any of those situations. The five mandatory recusal situations, which are paraphrased here, are:

1) the judge has a personal bias about a party or has personal knowledge of disputed facts in the case;

2) the judge, or a lawyer with whom the judge previously practiced law, served as a lawyer in the matter in controversy, or the judge or lawyer has been a material witness in the matter;

3) the judge, judge's spouse, or minor child has any financial interest in the

subject matter in controversy or in a party, or any other interest that could be affected substantially by the outcome of the proceeding;

4) the judge, judge's spouse, or a close relative is a party, a lawyer, a witness, or has some interest that could be substantially affected by the outcome of the proceeding; or

5) the judge served in previous governmental employment and participated as a judge, counsel, advisor, or material witness concerning the proceeding, or expressed an opinion concerning the merits of the particular case in controversy.

Let me add several notes on those five mandatory recusal obligations. First, concerning financial interests, in the federal system—unlike in some state judicial codes—there is no "de minimis" exception for recusal based on a financial interest. Even owning a single share of stock in a party requires recusal. This bright line rule avoids any ambiguity about recusal as a result of equity holdings.

Second, a judge cannot avoid recusal by placing assets in a blind trust, or by avoiding knowledge of the judge's financial holdings. The Code and the recusal statute require a judge to be informed about the judge's and the judge's family members' financial interests.

Finally, with respect to disqualification due to a financial interest, recusal is not required if the judge (or spouse or minor child) divests the financial interest. Divestiture is not permitted if the judge has an interest that could be substantially affected by the outcome of the proceeding.

In addition to the five specific mandatory recusal situations, Section 455 and Canon 3C also include a mandatory general disqualification requirement whenever the judge's impartiality might reasonably be questioned. The standard for determining disqualification under this principle is based on an objective determination. Thus the question is not whether the judge believes there is an issue of impartiality but rather whether an objective observer, or "reasonable person," might reasonably question the judge's impartiality.

A judge who is disqualified under this impartiality section has the option to use the "remittal" procedure and obtain waivers to remain on the case. The process is transparent and is designed to avoid placing any pressure on parties to waive a judge's decision to disqualify. The judge is required to disclose on the record the basis for disqualification; then the parties and their lawyers must be given the opportunity to confer outside the presence of the judge, and if all parties and counsel agree in writing or on the record that disqualification is not in order, then the judge may proceed with the case. This procedure is not available for

recusal based on the five specific mandatory grounds for disqualification.

**Transparency and the Recusal Framework**

The recusal statutes and the Code of Conduct lie at the heart of a much broader framework that the judiciary has developed so that the recusal process contributes to a fair and impartial forum for each case. The judiciary has implemented efforts to promote transparency and provide multiple checkpoints in the recusal process itself, and has adopted a number of mechanisms that supplement the recusal requirements of the Code and the statutes.

Several institutional safeguards operate together to ensure that judges have the tools they need to follow the recusal statutes and the Code, and that judges who have real conflicts do not hear those cases. These safeguards begin with systems that randomly assign cases to the judges within a particular court. At the outset, the judge has an obligation to assess whether disqualification is required.

As an overlay to the random assignment process, the Judicial Conference requires all judges to use an electronic conflicts screening system to ensure that judges do not inadvertently fail to recuse based on financial interests in a party. Under this mandatory policy, each judge must develop a list of financial interests that would trigger recusal. Special conflicts-screening software is used to compare a judge's recusal lists with information filed in each case. The system

5

flags potential conflicts, which enables the judge to decline an assignment or, if the case has been assigned, to recuse if necessary.

Once a case is assigned, a judge has a further continuing obligation to evaluate and monitor the case for potential recusal triggers. If any such issue arises, the judge must re-evaluate recusal—a move that is also contemplated by the statute.

In addition, all judges must file detailed annual financial disclosure reports under the Ethics in Government Act. These reports include extensive detail concerning all financial holdings, dates of acquisition and disposition, even of partial interests, board memberships, gifts and reimbursements. In addition, judges are required to disclose their attendance at privately-funded educational seminars and the seminar providers must disclose their sources of funding. These reports are publicly available so that litigants may check on financial and other interests that might require a judge to recuse from a case.

The institutional safeguards are designed to minimize conflicts before the possible need for a recusal motion arises. Beyond these systemic safeguards, the litigation process itself is designed to provide ample opportunity for any party to challenge a judge's qualification to hear the case. If a party believes that a judge should be disqualified, a recusal motion may be filed under either Section 144 or

Section 455. Judges typically explain their recusal decisions in orders that grant or deny a recusal motion. Appellate review provides a further avenue of recourse to the objecting party.

Buttressing this framework is the ability of judges at any point in the process to obtain recusal or other ethics advice from the Codes of Conduct Committee of the Judicial Conference, as discussed in greater detail below.

Finally, the statutory judicial discipline process, under the Judicial Conduct and Disability Act, may be available to provide a check on flagrant violations of the recusal rules. For example, a judge who openly decides to hear a case in which he or she holds a financial interest could be the subject of a judicial conduct complaint initiated by a litigant, a member of the public, or the chief judge of the circuit. The Judicial Conference, through the Breyer Commission, recently revised and strengthened the procedures under the Judicial Conduct and Disability Act by adopting all the Commission's recommendations for addressing complaints against judges.

**Role of the Judicial Conference Committee on Codes of Conduct**

To help judges comply with the wide array of recusal standards and safeguards, the judiciary turns to the Judicial Conference Committee on Codes of Conduct. The Committee's jurisdiction — which is set by the Judicial Conference

7

of the United States — broadly encompasses ethics policy for the judiciary. We serve as an advisory body — an ethics service center and sounding board for judges — on ethics issues including recusal. Our job is developing ethics codes and regulations, advising judges and employees on ethics matters, and developing ethics education programs. We also oversee the mandatory conflicts screening system and the approval process for Certificates of Divestiture, which authorize judges to divest and roll over holdings for tax purposes in order to avoid unnecessary recusals. Our goal is to make sure that the ethics guidelines for judges effectively protect the fairness and impartiality of the judiciary, while striking the right balance with judicial independence.

The Committee has 15 members, including a representative from each judicial circuit, a bankruptcy judge, and a magistrate judge. All Committee members participate in providing ethics advice for judges and judicial employees. Because we serve as an ethics advisory body, we do not monitor judicial conduct. We do not have the authority to investigate, adjudicate or resolve factual matters, and we are not involved in any way in disciplinary policy or activities. A separate committee on Judicial Conduct and Disability handles those matters. This separation of functions encourages judges to come to us for confidential advice. In my view, judges want to do the right thing. They wouldn't call on us otherwise.

Judges can obtain ethics guidance in several ways. As a starting point, judges can, of course, do their own research. The statutes and the related case law, the Code of Conduct for United States Judges, the associated Commentary, and the ethics regulations adopted by the Judicial Conference are the basic resource documents.

Beyond the Codes and regulations, the Committee has issued about eighty Advisory Opinions addressing topics that frequently arise. These published Advisory Opinions provide guidance that goes well beyond the bare terms of the recusal statutes and Code of Conduct, in order to assist judges in complying with their recusal obligations. The Committee has published a wide range of guidance on recusal issues, for example:

- Advisory Opinion No. 20:     Disqualification Based on Stockholdings by Household Family Member

- Advisory Opinion No. 24:     Financial Settlement and Disqualification on Resignation From Law Firm

- Advisory Opinion No. 38:     Disqualification When Relative Is an Assistant United States Attorney

- Advisory Opinion No. 66:     Disqualification Following Conduct Complaint Against Attorney or Judge

9

- Advisory Opinion No. 70: Disqualification When Former Judge Appears as Counsel

- Advisory Opinion No. 100: Identifying Parties in Bankruptcy Cases for Purposes of Disqualification

- Advisory Opinion No. 101: Disqualification Due to Debt Interests

- Advisory Opinion No. 106: Disqualification Based on Ownership of Mutual or Common Investment Funds

- Advisory Opinion No. 107: Disqualification Based on Spouse's Business Relationships

The published advisory opinions are available to judges and the public through the Judiciary's website, www.uscourts.gov.

A judge who needs ethics advice can also come directly to the Codes of Conduct Committee. The Committee is dedicated to providing timely and thoughtful ethics advice to any judge who contacts us. Our recusal advice is given under Canon 3 of the Code of Conduct, which parallels Section 455, the recusal statute. Although we do not have the jurisdiction to interpret this recusal statute directly, our advice is provided with an eye toward section 455 and the case law that has developed under it. We also routinely remind judges to consult recusal case law in their circuits before reaching final conclusions concerning recusal

questions.

The Committee provides informal ethics guidance on a broad range of issues. Judges can contact me or any committee member for an informal ethics opinion. We usually provide an informal response on the spot or with some minimal additional research on subjects where we have prior advice or precedent. I personally field several hundred calls a year from judges, while our committee counsel responds to many more. We receive about 1000 informal requests for ethics guidance in an average year.

In cases where an informal opinion doesn't suffice or the judge raises a novel issue, the judge may seek what we call "formal" ethics guidance. The Committee issues a confidential letter of advice, usually within three weeks or less. If a judge needs an expedited letter, the Committee is on call to respond. We regularly consult with judges who are in trial, in emergency situations or under time constraints. The Committee issues about 100 advice letters each year. All of the letters are confidential, as is all of the Committee's advice to individual judges.

Another key Committee function is developing and delivering ethics education for judges. In the last few years we have greatly increased our participation in formal training at judicial meetings, particularly through programs with the Federal Judicial Center. In training we cover ethics scenarios drawn from

the confidential inquiries we receive, as well as hypothetical ethics problems, to encourage discussion among the judges. At national and regional meetings of appellate, district judges, magistrate judges, and bankruptcy judges, our committee members routinely offer interactive ethics presentations. We tailor our education programs to the audience; our programs have ranged from video vignettes to teaching ethics through popular music. We provide Internet-based training, such as ethics quizzes to gauge what we call a judge's EQ, or "Ethics Quotient," on a variety of topics including recusal. We also send out periodic ethics updates to all judges. We regard ethics as a very serious matter and look upon these opportunities as an excellent way of working with our judicial colleagues on ethics issues.

Through the Federal Judicial Center, we provide ethics education for new judges and provide ethics training for law clerks, staff attorneys, clerks and judicial assistants. We offer an introductory video on ethics, coupled with explanatory booklets for judges, law clerks, and employees.

We participate in ethics education events that include both judges and attorneys. Lawyers are often very interested in knowing about judicial ethics, such as recusal procedures and what a judge is permitted to do within the bar and the community. We have highlighted ethics issues in joint bench/bar meetings, and in

12

meetings with the media. Our extensive training effort underscores the value and the importance the federal judiciary places on ethical conduct.

**Conclusion**

In summary, both judges and the public have a broad array of tools and a transparent environment to ensure the fair and impartial adjudication of cases, while maintaining the independence of the judiciary needed to uphold our laws. That toolbox includes statutes and case law on recusal, the judiciary's strict ethics requirements and enforcement mechanisms, and the overall framework for ensuring that recusal obligations are met, combined with the advisory services provided by the Codes of Conduct Committee.

I will be happy to respond to any questions.