PETITIONER'S REPLY TO LNV'S RESPONSE IN OPPOSITION TO PETITION FOR EMERGENCY WRIT OF MANDAMUS

Case No. 15-35963

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

IN RE: DENISE SUBRAMANIAM

---

DENISE SUBRAMANIAM
Defendant – Petitioner
v.
LNV CORPORATION
Plaintiff – Respondent

Gabrielle D. Richards
Respondent

UNITED STATES DISTRICT COURT for the
District of Oregon Portland Division
Respondent

Judge Michael W. Mosman
Respondent

---

From the United States District Court
District of Oregon Portland Division
Judge Michael W. Mosman Presiding
Case No. 3:14-cv-01836

---

PETITIONER'S REPLY TO LNV'S RESPONSE IN OPPOSITION TO PETITION FOR EMERGENCY WRIT OF MANDAMUS

---

Denise Subramaniam
c/o 1905 SE 24th Ave
Portland OR 97214
503-764-5300

Pro se Petitioner

Gabrielle D. Richards
Martin & Richards, LLP
111 SW Fifth Ave, Suite 3150
Portland, OR 97204
503-444-3449
Fax: 503-296-5834
Email: gabby@cascadialawyers.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

Erick J. Haynie
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2017
Fax: 503-727-2222
Email: ehaynie@perkinscoie.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation


Jeffrey M. Peterson
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2075
Email: jeffreypeterson@perkinscoie.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

---

## PETITIONER'S REPLY TO LNV'S RESPONSE IN OPPOSITION OF PETITIONER'S EMERGENCY WRIT OF MANDAMUS

Comes now Petitioner and replies to Respondent LNV Corporation's ("LNV") response in opposition to her Emergency Writ of Mandamus and states the following:

1.  Respondent LNV does not provide any argument to address the question of how LNV could be the holder of Petitioner's mortgage note when the instruments that purport to convey the note and the deed of trust to LNV were executed on **March 10, 2008** before Respondent LNV ever existed.  (i.e The allonge bearing a questioned signature of Jason J. Vecchio and an assignment of deed of trust recorded in Washington County as instrument **2008-073972** on August 27, 2008.)

2.  Respondent LNV does not provide any argument to address the question of whether Respondent LNV has operated outside in violation of Nevada law by transacting business before it obtained a business license and whether the Doctrine of Unclean hands should bar LNV from obtaining equitable relief.  LNV's Corporate disclosure states that LNV is a wholly owned subsidiary of Beal Bank USA. Attached as Exhibit AA is a screen print of the Nevada SOS website's information about Beal Bank USA. Note that D. Andrew Beal is the President, the Director and the Secretary of Beal Bank USA.  Beal Bank USA is just another corporate fiction "alter ego" for D. Andrew Beal.

3.  Petitioner has obtained certified copies of the signature of Jason J. Vecchio on his own mortgage. They are attached hereto as Exhibit A. She has already provided this Honorable Court and Respondent District Court with a certified copy of his authentic notary signature and the court information about his name change in 2010 to show that on March 10, 2008 when he purportedly signed the questioned allonge he would have signed as Jason J. Vecchio-Smith, his legal name at the time.  Petitioner submitted the OMNI preliminary report [Doc # 101-3] to dispute the authenticity of the Jason J. Vecchio signature on an allonge that purports to convey Petitioner's note to LNV, and on nearly identical allonges to notes of the Swifts, Catherine Gebhardt, Tuli Molina-Wohl, Robynne A. Fauley, and Rhonda Hardwick.

4.  Robin D. Williams B.S.A.J., M.F.S., M.S., D-BFDE a Board Certified Forensic Document Examiner since 2008 who was mentored under the direction of Clarence Bohn retired FBI Crime Laboratory and Professor at George Washington University, Washington D.C. determined these Jason J. Vecchio signatures are copies of each other.  Petitioner attaches

herein as <u>Exhibit B</u> accurate color copies of the OMNI signature comparison chart that was sent to Petitioner by the Swifts to better show how he arrived at such a determination. Certainly this fact when coupled with the fact that these Jason J. Vecchio copied signatures on these questionable allonges do not match his known authentic signatures raises a genuine question about whether these instruments were forged. A forged instrument conveys nothing.

5. Respondent LNV does not provide any argument to address the question of how LNV could be the holder of Petitioner's mortgage note when the allonge that purports to convey the note to LNV appears to an expert in determining the authenticity of documents, and to any reasonable objective person to be a forgery manufactured by digital means using a copied signature.

6. The first assignment of deed of trust recorded with Petitioner's county on June 28, 2006 as instrument number **2006-077542** endorsed by Dana Lantry executed on December 29, 2005 conveys the deed of trust to Homecomings Financial Network, Inc. ("Homecomings") while the undated and suspect allonge also endorsed by Dana Lantry conveys the mortgage note to Residential Funding LLC. No evidence exists of the mortgage note ever being conveyed to or from Homecomings. Bifurcation of the mortgage note from the deed of trust therefore occurred on or around December 29, 2005 and raises genuine questions of fact and law specific to LNV's claims that it is the holder of the note.

7. Again Respondent LNV provides no argument in its response to address the genuine issues of law specific to whether LNV can be the holder of Petitioner's mortgage note with standing to foreclose on Petitioner's property after bifurcation occurred in 2005.

8.  These aforementioned contradictive allonge and assignment also raise questions about the authenticity of the allonge; and suggest as Petitioner has claimed that the allonge is a forged instrument. LNV can't be the holder of the note via a forged allonge. A forged instrument conveys nothing.

9.  Respondent LNV does not provide any argument to address the questions raised by Petitioner about the authenticity of what Respondent LNV claims is the genuine "original" mortgage note and deed of trust. Specifically as to why Petitioner's initials on [Doc # 5-2] are black except on pages where other blue ink signatures appear. This is indicative of digital alteration of a black and white copy with color enhancement of signatures to deceptively make the copy appear to be a genuine wet ink document when it is not.

10. Nor does Respondent LNV address in its response why Petitioner's initials on the purported "original" note shown to her by Respondent Gabrielle Richards has a black outline surrounding the blue color inside the initials. This can easily be observed in the high resolution photographs; which also indicates digital alteration.

11. Nor does Respondent LNV address in its response why the shade of blue used in Petitioner's initials doesn't match the shade of blue used on other signatures on this purported "original" note.

12. Nor does Respondent LNV address in its response the question of why the same shade of blue used for signatures on Petitioner's purported "original" note was also used on what LNV claims to be the "original" mortgage notes in the cases of Becky Gentry-Youngblood and Robynne A. Fauley. The probability of these three homeowners miles apart with notes

being executed years apart all using pens with the same unusual shade of blue is exceptionally low. This warrants a forensic examination of these documents for authenticity and **<u>NOT</u>** a summary judgment order favoring LNV. These issues constitute genuine questions of fact in dispute that can't be determined by a judge who is not trained in the procedures and methods used by qualified experts in forensic document examination like Robin D. Williams B.S.A.J., M.F.S., M.S., D-BFDE and Dr. James M. Kelley PhD. [Doc # 101-4].

13. Furthermore if LNV aka Andy Beal believed these notes were in fact genuine then he'd have no problem allowing them to be examined for authenticity. Instead he vigorously fights any attempt to have this done; this is because he KNOWS they are forgeries.

14. Respondent Judge Mosman did not merely err in the issuance of his summary judgment order he denied Petitioner due process, equal protection of law and a jury trial before he deprived her of her life, liberty and/or property without a jury trial in violation of her civil rights guaranteed by the United States Constitution. As an unrepresented layperson Petitioner is like a sitting duck against a powerful and exceptionally wealthy advisory such as Andy Beal aka LNV. Federal district courts and federal judges have a fiduciary duty to uphold the United States Constitution bestowed upon them by the United States Constitution and by a constitutionally mandated oath of office. Federal judges are fiduciaries to the public. Federal judges are obligated to protect the constitutionally derived civil rights of all citizens and particularly members of disadvantaged classes that come before them unrepresented. Public interest demands federal judges to be defenders of constitutional rights, not willful violators of constitutional rights.

15. Petitioner doesn't deserve the trashing LNV's Counsel Gabrielle Richards directed towards her in LNV's response to Petitioner's Emergency Writ of Mandamus. She merely has done everything possible to protect her property rights and retain the home that accommodates her specific disabilities. Ms. Richards blames Petitioner for burdening the courts when the real culprits are Respondents LNV, Ms. Richards and Judge Mosman.

16. Respondent Judge Mosman violated his fiduciary duties, his oath of office and the code of conduct for United States judges; any reasonable objective person would conclude he was biased against Petitioner. He exhibits the same discriminatory and inflammatory attitude against Petitioner that is reflected throughout LNV's Counsel's response to Petitioner's Emergency Writ of Mandamus.

17. Respondent LNV does not provide any argument in its response to address how the Dana Lantry endorsement on the back of LNV's purported "original" note can be authentic when Denise Price from the JP Morgan Chase executive offices told Petitioner this endorsement does not exist in Chase's records. This is another fact that undermines the authenticity of LNV's purported "original" note and its claim to be the holder of the note with standing to foreclose on Petitioner's property. A forged note conveys nothing. Judge Mosman acknowledged this as per the transcript of the status conference hearing [Doc # 92-1]. It appears that Respondent Judge Mosman never read most of Petitioner's pro se pleadings. This substantiates Petitioner's and the other LNV/Beal victims challenge to the constitutionality of summary judgments because they result in a negative disparate discriminatory impact on pro se litigants whose pleadings appear to be routinely disregarded by judges as not being worthy of their attention.

18. Petitioner filed several motions for judicial notice of adjudicative fact pursuant to Federal Rule of Civil Procedure 201 [Doc # 19], [Doc # 59], [Doc # 60], [Doc # 64], [Doc # 81].

FRCP 201(b)(2) - Judicial Notice of Adjudicative Facts states:

> *Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.*

19. FRCP 201(c) states:

> *Taking Notice. The court: must take judicial notice if a party requests it and the court is supplied with the necessary information.*

20. Petitioner requested judicial notice and supplied Respondent District Court with the necessary information yet Respondent Judge Mosman denied her motions for judicial notice of adjudicative fact in violation of the FRCP 201(c). FRCP 201(c) does not permit judicial discretion to deny motions for judicial notices of adjudicative facts. Petitioner requested judicial notice of adjudicative fact in *Beal Bank, SSB v. Sarich, No. 05-2-11440-1SEA (King County Super. Ct. Sept. 8, 2006)* [Doc # 59] because as stated in her motion:

> *…it was judicially determined that: "The second page of the Term Note, dated September 24, 2002, attached as Exhibit 2 to Beal Bank's Complaint for Judicial Foreclosure of Deeds of Trust, appears to be signed by Kay Sarich. CP 20. However, a copy of the actual September 24, 2002 Term Note obtained from the original lender (U.S. Bank) shows that Kay Sarich did not sign the note. CP 105. Beal Bank subsequently admitted switching the signature pages."…*
>
> *The adjudicative facts in Beal Bank, SSB v. Sarich are relevant to Defendant's case because it shows a propensity for corporations owned by Daniel Andrew Beal aka D. Andrew Beal to alter Notes;…*
>
> *Adjudicative fact in Beal Bank, SSB v. Sarich further shows Beal's propensity to prey on the most vulnerable in our society, the elderly, without any sense of humanity or compassion for the destruction his actions cause to the lives of his victims…*
>
> *Furthermore the adjudicative facts in Beal Bank, SSB v. Sarich demonstrates how Defendant and the other LNV/MGC/Beal victims and the Sarichs are being denied due process and equal protection of the law. Had any of us had been found by a court to have altered a note to make it appear that someone signed it when they did not we would likely be arrested…*

> *WHEREFORE, pursuant to Rule 201 DEFENDANT moves this Court to take Judicial Notice without hearing of adjudicative facts pertaining to the regular business practices of D. Andrew Beal owned business entities, including Beal Bank and LNV Corporation and their propensity to misrepresent and falsify facts pertaining to mortgage Notes and Deeds of Trust.*

Petitioner requested judicial notice of adjudicative fact in <u>United States of America v.</u>

<u>Lorraine Brown;</u> *Case No. 3:12-cr-198-J-25 MCR. (MD. Fla.)* [Doc #s 19 and 64] because

as stated in her motions:

> *Lorraine Brown was indicted and convicted of for "Conspiracy to Commit Mail and Wire Fraud" pursuant to 18 U.S.C. 18 § 1341 and 18 U.S.C. 18 § 1343... Defendant is a victim of the crimes of Lorraine Brown and her co-conspirators... Adjudicative facts in the criminal conviction of Lorraine Brown include:*
>
> a. *Lorraine Brown had co-conspirators.*
> b. *Lorraine Brown's co-conspirators have not yet been prosecuted for their crimes.*
> c. *Lorraine Brown committed her crimes through Lender Processing Services, ("LPS")* [LNV aka Beal uses LPS affiliated service providers and attorneys]
> d. *At the direction of Brown and other co-conspirators employees of LPS began forging and falsifying signatures of mortgage-related documents and filed them with property recorders offices across the country.*
> e. *Lorraine Brown's co-conspirators used other unauthorized employees to sign mortgage-related documents on their behalf knowing that the documents would be notarized as if the co-conspirator has signed the document, when he/she had not.*
> f. *Between 2003 and 2009 it is estimated that over I million fraudulently signed and notarized mortgage-related documents were produced through the crimes of Lorraine Brown and her co-conspirators and filed with property recorders' offices across the country....*
>
> *Federal Rule 301 Presumptions in Civil Cases states:*
>
> > *"... unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."...*
>
> *LNV as the plaintiff had the burden of proof or persuasion in the present case. LNV submitted to the court various mortgage related documents that included deed assignments, the deed of trust the note with endorsements and allonges to the note as evidence of its standing to foreclose on Defendant's property. Defendant challenges the authenticity of these documents. However deed assignments, since they are filed with the property recorders' office carry a presumptive burden. Presumptions governed by Rule 301 are given the effect of placing upon the opposing party*

*(Defendant in the present case the burden of establishing the nonexistence of the presumed fact, once the party invoking the presumption establishes the basic facts giving rise to it...*

*Adjudicative fact in the criminal indictment and conviction of Lorraine Brown for conspiracy to commit mail and wire fraud defeats the burden of presumption that deed assignments and other documents filed with a property recorders' office must be genuine. Adjudicative fact in this noticed criminal conviction establishes that over 1 million fraudulently signed and notarized mortgage-related documents were produced through the crimes of Lorraine Brown and her co-conspirators and these false and forged documents were filed enmass with property recorders' offices across the country; THEREFORE courts cannot assume the genuineness of such records.*

21. It appears that Respondent Judge Mosman did not simply err but abused his judicial discretion. Furthermore Petitioner and several other LNV/Beal victims filed Notices of Constitutional Questions [Doc # 69] and Revised Notices of Constitutional Questions in an attempt to simplify and more narrowly construe our constitutional challenges to summary judgments [Doc # 123] pursuant to 28 U.S.C. § 2403 and FRCP 5.1(a)(1) which states:

   (a) Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

       (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:

           (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or

           (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and

       (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

   (b) Certification by the Court. The court must, under 28 U.S.C. §2403, certify to the appropriate attorney general that a statute has been questioned.

   (c) Intervention; Final Decision on the Merits. Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier. Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.

(d) No Forfeiture. A party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted.

22. Neither the United States nor any state, nor any federal or state agency, nor any federal or state officer or employee in an official capacity is a party to the actions that give rise to the constitutional questions expressed by Petitioner and the other LNV/Beal victims who did each file a notice of constitutional question stating the question and identifying the paper that raises it; i.e summary judgments.  Quoting from [Doc # 123] Petitioner and the other LNV/Beal victims claim that summary judgments deny them due process and equal protection of the law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and unconstitutionally deprive of their property and right to a jury trial under the Seventh Amendment to the United States Constitution because they:

*…result in a discriminatory disparate impact on non-criminal homeowner pro se litigants fighting wrongful foreclosure actions… result in a discriminatory disparate impact on non-criminal pro se litigants involved in other civil rights related litigation, such as employment discrimination, and divorce and child custody litigation, where, like with homeowners in foreclosure related litigation, a significant number of litigants cannot afford legal representation and are left with few choices but to represent themselves pro se… result in an arbitrary, capricious, abuse of judicial discretion resulting in rulings that are not in accordance with law and/or made without the observance of procedure required by law… Most of these summary dismissals and summary judgments rendered against homeowner pro se litigants are due to procedural defects in pro se pleadings and due to pro se litigants' inexperience with obtaining evidence through discovery. More often than not, these pro se litigants are deprived of any meaningful opportunity for discovery by over use of Rule 56 and Rule 12 by judges who want to quickly end these pro se foreclosure cases with rulings favoring the foreclosing parties which are based on their own personal biases rather than on any sense of justice…*

*A primary strength of the jury trial is that it acts as a check to unfettered prosecutorial power. If judges decided every case, it could raise a number of concerns about fairness in the judicial process… pro se homeowners litigants are in fact experiencing such unconstitutional unfairness in the courts as a result of Rule 56 and Rule 12 which have eroded our judiciary into an oppressive mechanism for imposing the undemocratic will of an elite corporate oligarchy on the masses thorough civil litigation that often results in an unconstitutional deprivation of their life, liberty and property…*

*D. Brock Hornby a District Judge on the United States District Court for the District of Maine in SUMMARY JUDGMENT WITHOUT ILLUSIONS writes on page 7:*

> *"Summary judgment motions change litigation stakes. By filing them, defendants delay recovery and increase Defendant' legal expenses (or Defendants' lawyers' expenses in contingent fee cases). They also increase Defendants' risk because, if Defendants lose, all is over except for an expensive, delayed, and uncertain appeal. Therefore, Defendants' case value decreases for settlement purposes."*

*The jury trial is a vital part of America's system of checks and balances. Appointed judges might be beholden to politics and the people who appointed them. Elected judges could be swayed by public opinion in a given case. Jurors, on the other hand, are not appointed and instead serve on a jury as part of their civic duties... A jury trial, guaranteed by the United States Constitution, is the first major check on the discretion of judges. A judge, holding office over the course of multiple cases, and selected by appointment or election, is susceptible to undue influence. A jury, chosen by sortition, or lot, for a single case, just before the case, is less likely to be corrupted, and having multiple jurors render verdicts collectively provides a check by each on the others. What they might lack in knowledge of the law is offset by their connection to the non-legal environment in which most people subject to the law must operate.*

*"I consider trial by jury the greatest anchor ever yet devised by humankind for holding a government to the principles of its constitution." Thomas Jefferson, 1792.*

23. Respondent Judge Mosman and judges presiding in other LNV/Beal victims' cases (Judge Thomas A. Varlan and Judge Jane Boyle) have each ignored these notices of constitutional questions. As they have done through their denials of these pro se litigant's motions for judicial notice of adjudicative fact, it appears that Respondent Judge Mosman and these other judges have abused judicial discretion. As pro se litigants untrained in law Petitioner and the others attempt to follow the rules; yet time and again we observe judges trained in law failing to follow the rules. Judges are public servants but perhaps some of them have forgotten this.

24. On page 6 of LNV's response to Petitioner's Emergency Writ LNV's Counsel Respondent Gabrielle Richards states:

> "Petitioner has repeatedly demonstrated a profound disregard for the law and a disturbing lack of respect for the Court. In fact, nearly every person or entity that has

been involved in this case – including judges, attorneys, nonparties and corporations – has become Petitioner's target in pleadings, Bar complaints and letters to the Department of Justice and Federal Bureau of Investigation. Having grown weary from the avalanche of frivolous pleadings and the toxicity of Petitioner's theories, the District Court sua sponte imposed the blanket pre-filing restriction. Now, having lost in every other forum, Petitioner seeks refuge with the Ninth Circuit to provide further cover for her wild tales of conspiracy and malevolent machinations."

This is nothing more than a despicable personal attack on Petitioner; and addresses none of the genuine issues specific to Respondent LNV's standing to foreclose that is before this Honorable Court of Appeals for review.  As a pro se litigant Petitioner does not always understand the law. Her lack of knowledge appears to be interpreted by Ms. Richards as a "profound disregard for the law" however from Petitioner's and the other LNV/Beal victims perspective it is Respondent LNV and its owner Andy Beal and his attorneys who have a "profound disregard for the law." As average hard working taxpaying God-fearing Americans who have been thrust into the civil court system though the misfortune of being targets for highly predatory mortgages; fraudulent securitizations of those mortgages, misappropriation of mortgage payments, false claims of default, false and forged mortgage related instruments, and fraudulent foreclosures Petitioner and the other LNV/Beal victims along with millions of other homeowners in similar circumstances have become appalled and outraged by the injustices and deprivation of their civil rights they have experienced in the very courts they turn to for relief.  As a group the pro se LNV/Beal victims do as much as possible to help each other because they find themselves at such a disadvantage. They have no access to the databases attorneys use for finding case law. When they ask court clerks for information about procedures they are brushed off with "we can't give legal advice."  As a result it takes pro se litigants many more hours, days and weeks to write their legal pleadings than it would take a trained attorney; just to have those pleadings

ignored and not read by judges. Their outrage at what they perceive is a breakdown of our civil justice system and a general denial of access to justice for an ever growing segment of our population is justified.

25. Along the line of how pro se litigants are unjustly treated by the courts at all levels, after Petitioner filed her motion for relief under Rule 60 and Respondent Judge Mosman denied it; the other LNV/Beal victims told her that a sheriff is a county agent so maybe she needed to file something in her county court to stop the sheriff's sale. They looked online and found information about challenging a garnishment that looked like it might be appropriate. Petitioner prepared a pleading based on this information (a copy is attached as <u>Exhibit C</u>) and went to the Washington County Courthouse early in the morning of January 29, 2016 the day of the sheriff's sale. She thought she could file the document and then take it over to the Sheriff's building to stop the sale. Petitioner was unable to file her challenge because the clerk at the Washington County Courthouse told her she needed a case number. She explained that she didn't have a case number. She thought she had to file a case in order to get a case number; so she hand wrote a petition but when she tried to file that the clerk told her she needed to pay the $252 filing fee. (Petitioner's only copy of this handwritten petition is buried in the storage units.) Petitioner didn't have the $252 dollars. She explained that she was unable to pay; she was low income and should qualify to file in forma pauperis but the clerk said they would not allow her to file in forma pauperis unless she had all the paperwork they needed (which of course she didn't have because she didn't know she needed it ahead of time and the Washington County Courthouse was a long distance from her home so she couldn't run back home to get the paperwork and get back before the sheriff's sale.) She phoned everyone she knew to try to find someone would pay

the fee for her to no avail; and by this time the sale had already taken place. That court

clerk had to have known that the case number Petitioner needed was for a case someone

else had filed against her. Had the court clerk just asked Petitioner if she was trying to file

her challenge against someone who was trying to enforce a garnishment against her then

Petitioner would have realized that LNV had filed a case already against her and told the

clerk to look for such a case. This is how pro se litigants are deprived of their civil rights

by courts.

26. Respondent LNV and its Counsel Respondent Gabriel Richards most certainly knew that

Petitioner would defend her property rights as vigorously in the Washington County Court

as she did in federal court and the <u>ONLY</u> reason she did not was because she was never

given service of summons. This was an intentional act meant to deprive Petitioner of any

opportunity to present a case in her defense. Respondent Gabriel Richards knew that when

Petitioner is suffering from health problems and the symptoms of her disabilities she is

unable to check her emails and because she receives hundreds of emails a day important

emails get lost in the barrage; and that often her physical mail gets displaced under periods

when Petitioner is unable to function due to the symptoms of her disabilities. Petitioner has

specifically told Respondent Gabriel Richard this and asked her to phone when she has sent

something important. This is a reasonable accommodation for Petitioner's disability. Ms.

Richard never once phoned Petitioner to let her know she had filed a case in the

Washington County Court in behalf of her client Respondent LNV.

27. A few days ago Petitioner learned she could have filed for a stay in the court of appeals.

This is also how pro se litigants are denied due process because they are always learning as

they go by the seat of their pants; and they learn what they should have done after it is too late.  Of course in Petitioner's case her appeal was terminated through no fault of her own and she didn't even know she still had an active appeal until a former attorney went into Pacer, reviewed the docket and told her it looked like her appeal was still active.

28. LNV's Counsel Respondent Gabrielle Richards attempts to minimize Petitioner's disabilities and make gross errs in the interpretation of her pleadings with statements like:

> "Petitioner never expressed a concern about the "toxicity" of the boxes being used to pack her belongings. (Id. at ¶ 13.)"  [Page 6 of Dkt#9]

Petitioner never made any claims about the toxicity of the boxes; she said the storage units were toxic to her because they were made with pressboard and the glues and solvents used to make pressboard off gases chemicals from these glues and solvents into the air; especially in the heat.  This then causes Petitioner to have asthma attacks, burning skin and burning and dry eyes, headaches, etc.  A long enough exposure could cause cognitive dysfunction.  Ms. Richards attitude expressed in her response exudes exactly the kind of discrimination against Petitioner's "hidden" disabilities that she expressed in her Writ.

29. LNV's Counsel Respondent Gabrielle Richards grossly misstates facts specific to what Petitioner was and was not permitted to do; and particularly egregious is her attempt to mislead this Honorable Court of Appeals into believing Petitioner had a "pro-bono counsel" when in fact she did not; and Ms. Richards knows she did not:

> "She was given the keys to three prepaid storage units and allowed access to the garage and yard areas to remove a trailer and other personal effects. (Id. at ¶ 14.)" [Page 6 of Dkt#9]

Petitioner was not permitted to choose the storage units. She was not permitted to be

present when her personal property was being put into boxes or into the storage units. She

was merely permitted to go with Jonathan who came from Texas to the units and was

shown the units. She was present with Jonathan who told the storage management that she

would be the party renting the units and they were then put into her name. She could not

know how toxic they were to her until after she received the keys and spent time inside

them trying to organize her personal property and consolidate the huge boxes packed by

others in a very haphazard way.  Petitioner was permitted only very limited access to her

garage and only after most of the things of importance to her had already been packed.

She was limited to lumber and other building materials and items outside the house; items

of this nature were brought outside so she and friends who had come to get their personal

property stored at Petitioner's home were permitted to load the items onto a utility trailer

and onto the top of Petitioner's vehicle.  (Note: Ms. Richards had originally told these

friends they would not be permitted to get their property but relented when they threatened

to sue.)  Petitioner was NOT permitted to get her travel trailer because the ground was too

water logged. Ms. Richards was not there so does know. Petitioner had called AAA to

remove a car on the property stored for someone else and take it to her storage unit and

asked the AAA driver if he could remove the travel trailer too, but the driver said he

couldn't. The Realtor, Brenda Hereth of Coldwell Banker Seal, in front of Jonathan told

Petitioner she could arrange to have it towed out of the backyard, but then when Petitioner

followed up a couple days later Brenda told her she wasn't able to have the travel trailer

moved after all. (Petitioner was only asking to have the travel trailer brought from the

backyard to the front yard so she could access it with her vehicle and tow it herself.)  They

put a lock on the only gate to the backyard wide enough for the travel trailer to pass through. A considerable amount of Petitioner's personal property remains inside the garage. Again she was told to coordinate with Realtor Brenda to pickup this property but Realtor Brenda has not cooperated; and Petitioner's personal property still remains inside the garage.

> "Petitioner obtained the assistance of pro bono counsel shortly after LNV took possession of the foreclosed home. (Id. at ¶ 13.) LNV gave pro bono counsel complete access to the home for more than an hour on February 11, 2016 to remove Petitioner's personal effects, including medications, clothes, computers, and documents. (Id.)" [Page 6 of Dkt#9]

This is completely untrue. Petitioner's former bankruptcy attorney was not representing her, pro bono or otherwise. Since Petitioner was not permitted to enter the house and because she was locked out with only the clothes she was wearing and a few things that she always carries with her; and because Petitioner was fearful of speaking with Ms. Richards since she had history of being hostile and intimidating towards Petitioner her former attorney volunteered to phone Ms. Richards on Petitioner's behalf. He was able to arrange for a couple assistants from his office to go over to the house to remove personal items; they were NOT given more than an hour. Although Petitioner emailed a list of items and where to find them when the assistants arrived at Petitioner's home they did not have the list. Petitioner talked with them by phone but was so traumatized she was shaking and could not remember what was on the list or where things she needed were located; which is the reason she sent a list. The assistants failed to get Petitioner's medications (they got her nebulizer for her asthma but not the albuterol). They said they had her computer but they actually brought a television monitor and DVD player. They got one sheet and a blanket; but didn't get her special pillow for her neck. They got her

neck stretching device but in Petitioner's current situation she has had little opportunity to use it because she has no place to lay completely flat. They did not bring the clothes Petitioner typically wears; they brought only two pair of jeans and two tee-shirts that she could actually wear. Petitioner STILL has not located her clothing packed by LNV's movers.

Jonathan from Texas told Petitioner he had instructed the movers to treat her property as if it were his mother's property. Either Jonathan lied or he hates his mother. Many of Petitioner's antiques have been damaged. Fragile glass and carving were thrown into boxes without any wrapping; and as a result several items were broken. Photos and framed artwork apparently go wet in the rain before they were packed and had mold on them. An oil painting done by Petitioner's mother had a huge slash in the canvas because it was packed with sharp pieces of wood and not wrapped. One or two dirty dishes have been found in several boxes as if the movers purposely scattered dirty dishes randomly in as many boxes as possible. Petitioner has been sickened by what has been done to her personal property; she has no time to mourn because she has to get everything moved by April 30th and has to keep working.

30. Petitioner's former bankruptcy attorney did tell her he would try to find an attorney who might take her case on contingency experienced in both bankruptcy law and real estate law to enforce the 2011 discharge of the debt and to get damages for her, but he was unable to find one that didn't want a retainer fee upfront. Petitioner has no financial resources to pay a retainer fee. She should not be denied access to justice because she is poor and disabled; but the truth is she has been denied access to justice

31. Although Respondent's Counsel Ms. Richards filed numerous affidavits and declarations in the Washington County Court claiming to have sent service to Petitioner she has not provided a shred of evidence that Petitioner actually received any of the items she claims she sent to Petitioner; and this is because Petitioner never received any notification. Although Petitioner eventually found out about the notice of sheriff's sale that had been posted on her door it was not until shortly before the sale. Due to her hospitalization in December and her other health problems throughout December and January she didn't actually know about the notice because someone temporarily staying at her home brought it inside, set it someplace and forgot to tell Petitioner about it.

32. The Judgment of Foreclosure signed by Respondent Judge Mosman and most likely prepared by Respondent Gabriel Richards, [Doc # 116-1] specifically granted LNV a monetary award on the note's debt: "LNV is awarded a money judgment against Defendant for the principal note indebtedness in the amount of $171,450.72…" However Petitioner's former bankruptcy attorney told her sometime before the sheriff's sale that the debt on the note was discharged in a 2011 Chapter 7 bankruptcy; see attached Exhibit D. Petitioner does not understand bankruptcy law but if this is true then it appears collection on a debt discharged in bankruptcy is a violation of 11 U.S.C. §524(a)(2)

33. 11 U.S. Code § 524(a) (1) states:

> *A discharge in a case under this title voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;*

34. The Judgment of Foreclosure signed by Respondent Judge Mosman may be void and if so must be vacated as a matter of law; and since the sheriff's sale of Plaintiff's property to

LNV and the illegal eviction of Petitioner from her home was based squarely on this

judgment so if this is true then possession of Petitioner's property should be immediately

returned to her as a matter of law. 11 U.S. Code § 524(a)(3) states:

> *A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case…*

35. And 11 U.S. Code § 541(a)(1) & (5) states:

> *The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case… Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—*

36. Petitioner recently downloaded the bankruptcy files from Pacer and the documents show

Petitioner's bankruptcy case was brought under 11 U.S. Code § 301. Her property located

at 13865 SW Walker Rd. Beaverton Oregon 97005 and the debt secured by her property

were disclosed on the Debtor's Statement of Indebtedness and Quality Loan Servicing and

Cal-Western Reconveyance, the parties attempting to collect on the debt through a non-

judicial foreclosure action in 2011 and apparently acting as debt collectors for Respondent

LNV were duly notified about the bankruptcy. Neither Respondent LNV nor its debt

collectors Quality Loan Servicing ("Quality ") and Cal-Western Reconveyance ("Cal-

Western") made a claim against Petitioner's estate for the debt.

37. Respondent Gabrielle Richards comments below are unconscionable and disgraceful for an

officer of the court:

"Now, having lost in every other forum, Petitioner seeks refuge with the Ninth Circuit to provide further cover for her wild tales of conspiracy and malevolent machinations…

The Petition, like so many of the conspiracy theories concocted by Petitioner, is frivolous and for the reasons set forth below, should be denied."

Petitioner doesn't think Ms. Richards would state anything so outrageous about another attorney in a response, but apparently a stupid insignificant pro se litigant doesn't deserve any respect. Appeal is a right and Petitioner is simply exercising that right. And the United States convicted Lorraine Brown of "Conspiracy to Commit Mail and Wire Fraud" pursuant to 18 U.S.C. 18 § 1341 and 18 U.S.C. 18 § 1343 for doing the same thing Andy Beal is doing.

Petitioner has established a prima facie case showing that the note and deed of trust submitted to the district court by Respondent LNV are likely digital forgeries and not genuine original instruments. Petitioner has established a prima facie case showing that Respondent LNV cannot be the holder of the note when the instruments purporting to convey the note and deed of trust to LNV were executed before LNV existed. Petitioner has established a prima facie case showing that Respondent LNV should have been denied the equitable relief it sought through foreclosure because it operated outside the law invoking the Doctrine of Unclean Hands.

Therefore this Honorable Court of Appeals should grant her Emergency Writ of Mandamus and immediately return possession of her property to her pending appeal; and if this Honorable Court of Appeals has enough evidence to do so she prays it reverse the district court's summary judgment order of foreclosure.

Respectfully Submitted,

/s/ Denise Subramaniam