PETITIONER'S REPLY TO LNV'S OBJECTION TO PETITIONER'S MOTION FOR
DISABILITY ACCOMMODATION

Case No. 15-35963

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE: DENISE SUBRAMANIAM

DENISE SUBRAMANIAM
Defendant – Petitioner
v.
LNV CORPORATION
Plaintiff – Respondent

Gabrielle D. Richards
Respondent

UNITED STATES DISTRICT COURT for the
District of Oregon Portland Division
Respondent

Judge Michael W. Mosman
Respondent

From the United States District Court
District of Oregon Portland Division
Judge Michael W. Mosman Presiding
Case No. 3:14-cv-01836

PETITIONER'S REPLY TO LNV'S OBJECTION TO PETITIONER'S MOTION FOR
DISABILITY ACCOMMODATION

Denise Subramaniam
c/o 1905 SE 24th Ave
Portland OR 97214
503-764-5300

Pro se Petitioner

Gabrielle D. Richards
Martin & Richards, LLP
111 SW Fifth Ave, Suite 3150
Portland, OR 97204
503-444-3449
Fax: 503-296-5834
Email: gabby@cascadialawyers.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

Erick J. Haynie
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2017
Fax: 503-727-2222
Email: ehaynie@perkinscoie.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation


Jeffrey M. Peterson
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2075
Email: jeffreypeterson@perkinscoie.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

---

## PETITIONER'S REPLY TO LNV'S OBJECTION TO PETITIONER'S MOTION FOR DISABILITY ACCOMMODATION

Comes now Petitioner and replies to Respondent LNV Corporation's ("LNV") objection to her Motion for Disability Accommodation through the appointment of JoAnn Breitling as her disability liaison and states the following:

1. Respondent LNV's objection to and argument against JoAnn Breitling acting as Petitioner's disability liaison simply because she is also a pro se litigant in another similar case with LNV is unfounded in law.

2. The Americans With Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990) and S. 3406 (110th): ADA Amendments Act of 2008 in no way limit the type of

accommodation a disabled person needs to prevent discrimination and to prevent a barrier to access (in this case access to justice) due to their disability. The only grounds permitted for denial is whether or not the requested accommodation is reasonable; meaning whether it places an undue burden on the court. The accommodation Petitioner has requested places no burden on the court because the person she has chosen to provide the accommodation has offered to do this service for her free of charge.

3.  Petitioner provides her own declaration herein and the declarations of several family members and friends who explain why such accommodation is needed and should be provided; and who also explain why as much as they want to help Petitioner they cannot provide this service for her. Petitioner's son is preparing a declaration but because he also has ADHD, is a single Dad and works he could not complete it in time to file with this pleading. Phone numbers can be provided on request.

Respectfully Submitted,

/s/ Denise Subramaniam

**DECLARATION OF DENISE SUBRAMANIAM**

I Denise Subramaniam ("Declarant") declare that I am over the age of eighteen (18) years and have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify to the facts set forth herein. I make this declaration under penalty of perjury. I make this Declaration in support of my need for ADA accommodations and in support of my right to choose an appropriate person to provide such accommodations for me.

Right now I am so exhausted and overwhelmed with getting my personal property out the storage units by April 30th where it was put by LNV that I cannot write what I probably need to write here. What I can say is that when I went to the offices of Perkins Coie to view LNV's purported "original" Note I asked the lady with us to hold something for me and Ms. Richards snapped at me that she was there to assist her and not me.

I didn't ask for accommodation with the district court because in my 2012 case Judge Mosman denied my motion for a medical extension when I became too ill to function due to my disabilities and dismissed my case. Then when he made me jump through hoops to get a medical extension for spinal surgery I was too afraid to ask because I feared it would just make him more hostile towards me.

My life has become a living nightmare. I pray every day for cooler weather because when we have hot weather I suffer because my vehicle is like an oven and there is no way to cool it down enough to sleep at night. Every penny is going for storage and gasoline and other expenses to move my personal property to safety so I don't lose my precious family photos and mementos, my mother's library, my artwork, family treasures and heirlooms, antiques and things I will need to survive. I can't afford to buy new; and although I will have to sell things I can't do it now because I have to move everything to safety first. And I have to continue to represent my own legal interest which takes a lot more time than anyone reading this could ever imagine.

Justice is not served by denying me the reasonable ADA accommodation I request. JoAnn has never been discourteous to Ms. Richards. She has the skills and ability to provide me with this accommodation, and I should not be deprived of the accommodation I need because LNV aka

Andy Beal and his Counsel Ms. Richards don't like that JoAnn is also a pro se litigant also in opposition to LNV.

Ms. Richards can choose who she wants to accommodate her. It is not equal protection of law to deprive me of the right to choose a person I believe can best provide me with the accommodation I need and who is willing to do so without charge.

My requested disability accommodation will not put any burden on the court, nor will it put any burden on LNV aka Andy Beal or his Counsel Ms. Richards. I should not be denied further access to justice and the protection from discrimination afforded me as a disabled person by the ADA simply because Ms. Richards and LNV don't like my choice.

If I had been given reasonable accommodation by the district court in the first place I would not have lost my home because I was never given service on LNV's county court action that resulted in a Sheriff's sale of my home and my being evicted without any opportunity to make an appearance or protect myself.

My son made me promise I'll still file his declaration and he hopes he can finish it tonight. I don't know what the time limit is for my reply so I wanted to file what I have now.

I so declare under penalty of perjury that the facts stated herein are true and correct to the best of my knowledge and personal experience.

Respectfully Submitted,

Denise Subramaniam

Declarant

**DECLARATION OF CHARLENE MILLER IN SUPPORT OF DENISE SUBRAMANIAM'S NEED FOR ADA DISABILITY ACCOMMODATION**

I Charlene Miller ("Declarant") declare that I am over the age of eighteen (18) years and have personal knowledge of the facts set forth in this declaration, am not a party to this action, and if called as witnesses, could and would competently testify to the facts set forth herein. I make this decaration under penalty of perjury.

I make this Declaration in support of my sister, Denise Subramaniam, and her need for ADA accommodations. I don't know a lot about my sister's disabilities but I have on many occasions mailed her birthday or Christmas cards with cash or checks inside and she didn't receive them because she doesn't check her mail. Her voice mail is also full all the time; and frequently she doesn't check her emails. She sometimes goes months without logging into FaceBook. I find this frustrating. Texting seems to be the best way to reach her, but even then it can take her awhile to notice a text message. It seems the times when it's most difficult to reach her is when she is extra stressed or has health problems. Naturally this causes me to worry.

I do believe my sister needs assistance keeping up with her mail, email and other important court related communications. I can't do this for her because I'm sixty-nine-years old and care for my husband who is disabled. I also help care for three active grandchildren while their mother gets daily chemotherapy and other cancer treatments. I have no understanding about court matters and would not feel comfortabe assisting her with court or legal communications. The stress of something like that would be too much for me when I'm already overwhemled by the grief and worry over my step-daughter-in-law's health. I live in Pennsylvania so the three hour time difference also makes it impossible for me to help her in this way.

I so declare under penalty of perjury that the facts stated herein are true and correct to the best of my knowledge and personal experience.

Dated: April 22, 2016 Respectfully submitted,

Charlene Miller

Declarant

## DECLARATION OF LARISSA BOYLAN IN SUPPORT OF DENISE SUBRAMANIAM'S NEED FOR ADA DISABILITY ACCOMMODATION

I, Larissa Boylan ("Declarant"), declare that I am over the age of eighteen (18) years, I have personal knowledge of the facts set forth in this declaration, and I am not a party to this action. I make this Declaration to support my mother, Denise Subramaniam, and her need for ADA accommodations.

I taught special education in a public elementary school and have professional experience with ADHD. Along with an IEP (individual education plan) and alternate testing sites with fewer distractions, a standard accommodation for children with ADHD is allowing them more time to take tests and complete tasks because they struggle so much to stay focused. ADHD symptoms rarely go away and adults with ADHD still struggle to compensate for their disability.

I have personal experience with how my mother's ADHD, fibromyalgia, and chemical sensitivity affect her life and her ability to function. As a child I often resented my mother's parental shortcomings. I didn't understand it was because she had ADHD. My mother was not diagnosed until she went back to college as an adult when I was seven years old. My mother is very intelligent and sometimes this works against her because people who do not live with her, or see her every day, do not understand how much she struggles to do so many things most of us take for granted. When I was young I could never understand how my mom did such complicated work with software, but couldn't manage to use a simple television remote control. I tried repeatedly to teach her how to do things like program our VCR without much success. I think the internet has given my mom a tool to compensate for her poor memory, because if you can't remember how to do something you can always look it up.

Although my mom was a good provider after she finished her college education, she still struggled with remembering appointments, important events, and to sort through mail and pay the bills. Too many times our electricity or water was shut off, not because my mother didn't have the money, but because she misplaced or didn't see the bill or she forgot to mail it. Once confronted with the fact that she had forgotten, she would pay it and then things would be fine until the next time she became distracted by family or work. Organizing and prioritizing is a problem for those with ADHD. My mother constantly tried new ways to organize her important papers and bills so she could better keep track of things. Often papers she was trying to organize covered every surface in a room. Even when she developed a successful system, a stressful event would eventually derail it. When she earned enough money she paid people to do these things for her.

In addition to her ADHD, my mom has a hypersensitivity to chemicals that don't bother most people. As a girl I resented the fact that she would not allow perfumes in the house or allow me to wear them. It wasn't until I was older that I understood the effect chemical exposures had on my mom and others with MCS (multiple chemical sensitivities syndrome). She has physical symptoms like headaches and migraines, asthma, and other allergy like symptoms from exposure to chemicals. There are also mental side effects as she becomes so overwhelmed by an exposure that she seems to blank out.

My mom's MCS symptoms became severe in 2006. Her ADHD symptoms also got a lot worse during this time and she was sick a lot. She was self-employed so when she was too sick to work she had no earnings so I had to drop out of college and take an extra job to help her pay bills.

During this time she started complaining about being in pain all the time and having no energy. She didn't have health insurance so she couldn't go to a doctor to find out what was wrong with her. She eventually found a clinic that gave her no-cost counseling and medication for her ADHD. This helped her enough that she was able to get a good paying contract, but it was in Los Angeles.

While she was in Los Angeles she was still in pain all the time and was having a lot of respiratory infections and a re-occurrence of asthma. When she saved up enough money she went to a rheumatologist to find out about the pain. She was diagnosed with fibromyalgia and, since she was almost always in pain, the diagnosis made sense. I went to visit her in Los Angeles not long after that and she showed me a lump on one of her hips that the doctor told her was just fat. She told me it was sometimes painful and sometimes felt hot to the touch. It didn't look like fat to me and I told her she needed to get a second opinion. It wasn't until she was back to Oregon and had Medicare that she could ask another doctor and it was diagnosed as bursitis of the hip.

I'm not sure if my mom's ADHD got worse when her MCS got worse or whether her new fibromyalgia symptoms made everything worse for her; but my mom really struggles to function at times, especially when she's under extreme stress.

We have twin babies and although I need and appreciate help we can't let my mom help with the babies unsupervised. She is too forgetful. I can't allow her to carry the babies up the stairs because she loses her balance easily. I have been with her when her knee just gives out all the sudden or when she takes a step and cries out because of sudden pain. She often uses a cane because she never knows when this will happen; she has fallen several times.

My mom's MCS causes her to be isolated from other people and after she returned from Los Angeles our dog became her constant companion and provided her with emotional support as well as physical support. His death in mid-December last year had a profound emotional effect on her.

Just before her dog's death my mom offered to carry our Christmas tree on her SUV and she fell while getting down from the tailgate and twisted her knee. Later she went to urgent care and they determined she sprained a ligament. It was painful and took a long time to heal. I now know that she was hiding this, and the unfavorable court ruling in November, from us because she didn't want to spoil our twins first Christmas.

Christmas has always been a difficult time for my mom because my younger brother died in mid-December. Now that I have my own babies I know how devastated I'd feel if one of them died. I can better understand how my mom's mental and emotional state in December and January immobilized her. I'm sure her dog's death re-opened the grief of losing my brother.

Routine is essential to accommodate or compensate for the symptoms of ADHD; disruption of routine is devastating. My mom has always had a tendency to just shut down when she experiences a traumatic disruption to her life and routines. It's almost like she experiences a sensory overload and just can't cope with one more thing so she refuses to look at anything new until she can regain a sense of emotional equilibrium. I'm sure her grief caused her to shut down. She doesn't check her mail or emails when she gets like this. I've sent her photos of the babies by email that she never opened and I know she loves her granddaughters. It's not that she doesn't want to check her mail and emails, but that she gets overwhelmed and can no longer function.

For my mom to be forced out of her home in February and forced to live in her vehicle because the nature of her disabilities prevented her from having any knowledge about a county court case is just beyond reason. My mom has had so many health problems over the years that she definitely needs and deserves accommodations for her disabilities. Without it she is prevented from defending her legal interests. She can't afford an attorney because she is disabled and because her disabilities prevent her from working she has a very low income.

During much of the time after my mom returned from Los Angeles we lived too far away from Portland to be of much help or support to her. Because I had to drop out of college in my senior year to help my mom I didn't complete my degree so I don't have the earning power to compensate for the debt. I wish I could do more for my mom but I cannot.

I'm not able to assist my mother as a disability liaison because I have twin infants and caring for them takes all my time and energy. After my mom lost her home I have not been able to count on her to help with the babies and I know that she is disappointed that she hasn't been able to spend as much time with them as she did before. This has been a tragedy for our family.

My mom can't even stay with us because our home is too toxic for her. It is very difficult for people with MCS to find chemical free places to live. Unless you love someone who has MCS you have no idea how difficult their lives are. I pray the court returns my mom's home to her.

I so declare that the facts stated herein are true and correct to the best of my knowledge and personal experience.


Dated: April 25, 2016

Respectfully submitted,


Larissa Boylan

_Larissa Boylan_

Declarant

# DECLARATION OF JAINE FAHY IN SUPPORT OF DENISE SUBRAMANIAM'S NEED FOR ADA DISABILITY ACCOMMODATION

Date: April 26, 2016

I Jaine Fahy ("Declarant") declare that I am over the age of eighteen (18) years and have personal knowledge of the facts set forth in this declaration, am not a party to this action, and if called as witnesses, could and would competently testify to the facts set forth herein. I make this declaration under penalty of perjury. I make this Declaration to support Denise Subramaniam and her need for ADA accommodations.

I have known Denise since 1967 when we were in High School in upstate New York. We remained close throughout our lives. They didn't test for ADHD when we were in school. We were "different" and what I appreciated most about Denise was her ability to embrace being different and others who were different. She also always stood up for the underdog no matter the cost to her.

After graduation I went to college while Denise married. In college I was diagnosed with ADHD. My own experiences with ADHD inspired me to choose a career in special education. Denise had her first child, Shiloh, in 1975 and in 1976 I moved to California to be closer to my brother and his family. By the time Shiloh was in second grade he was diagnosed with ADHD. ADHD runs in families. Denise's brother got A's in his math homework because Denise and I read the math problems to him but he failed exams because he couldn't read. He had a sit-in at his guidance counselor's office until the school agreed to let someone read word questions to him on math exams. This is now standard accommodation for children with ADHD.

Denise was very energetic and goes over and beyond in everything she does, but with that energy was a lot of disorganization. I remember her crossing the street to avoid her mom's best friend because she couldn't remember her name. Denise has many talents and would use them to assist others, sometimes to her own detriment. Denise also has had more than her fair share of losses and sorrows in life; and has experienced many injustices and betrayals because she trusted too easily.

Her marriage to Shiloh's father didn't last. Her second husband was East Indian. They experienced racial prejudice in upstate New York so after her daughter was born I convinced them to move to California. Denise gave birth to her second son in April 1984. He died just before Christmas.

Denise soon faced more losses. Her husband deserted her and their daughter. Shiloh was visiting his father and new step-mother whose friendship Denise welcomed but shouldn't have. She fueled misunderstanding and distrust with intent to convince Shiloh's Dad to sue for custody and cut Denise out of their lives because she saw her as a threat. Under the guise of helping during a difficult time she convinced Denise to let Shiloh stay with them the rest of the school year to set this up.

I went to Illinois to testify in the custody case. It was a rural town and the fact that Denise had a brown skinned daughter and was from California the land of "fruits and nuts" as it was portrayed in court seemed to be the deciding factor in spite of testimony from a court appointed psychologist who said it was not in Shiloh's best interest for his father to have custody because he and his wife were openly hostile towards Denise and were alienating Shiloh from his mother who was the parent most likely to encourage a natural relationship with the non-custodial parent. This was Denise's first taste of injustice. She had a Legal Aid attorney while Shiloh's Dad's attorney was a former state prosecutor.

Shiloh's Dad lived across the street from me growing up and I couldn't believe he did this. It was years later that we learned about the role Shiloh's step-mother played in this tragedy. The custody order placed financial burdens on Denise that prevented her from exercising her visitation rights as long as she remained in California so she decided to move to Illinois where Shiloh was.

She moved in with me for a few months before going. Denise was treated multiple times for strep throat, sinus infections and flu like symptoms. Her normal energy was gone and she struggled to prepare for the

trip. After Denise moved to Illinois Shiloh's step-mother did everything possible to keep Shiloh from visiting her. Within months they moved with Shiloh to another state. Denise sold almost everything she owned and spent her last penny moving to Illinois. It was after this she was hospitalized multiple times with strep throat, acute sinus infections, bronchitis and asthma and she started having crippling migraines. When we talked on the phone Denise complained about being so exhausted she couldn't get out of bed. Later she was diagnosed with Epstein Barr Virus/Chronic Fatigue Syndrome. Her acute reactions to chemicals started too. Doctors in Illinois gave her no hope for recovery so she found a doctor in San Francisco who agreed to help her long-distance. It took three years but Denise finally recovered.

She went to college where she too was diagnosed with ADHD. She developed several strategies to compensate for her ADHD symptoms and finally built a successful career. During this time I was diagnosed with fibromyalgia/arthritis. With busy lives our opportunities to talk or visit dwindled so we didn't want to dwell on our respective physical challenges. In 1997 Denise moved to Portland Oregon and brought her Dad up from California to care of him. He was diagnosed with a terminal illness and in 1999 I went to Oregon and lived with her for four months to help care for him.

It was during this time I learned how fearful Denise was about losing her job because of her CFS/MCS symptoms that kept reoccurring. She struggled to concentrate and sometimes sat in her office just staring at the walls unable to remember what she was supposed to do; other times she was so exhausted she crawled under her desk to sleep. Denise loved her job. She was a valued employee so she said they gave her a lot of leeway but she felt guilty because she could no longer do what she once did.

Her personal life was falling apart. Even though she had the money she forgot to pay bills and her mail piled up unopened. She even forgot to cash checks before it was too late. I did my best to help her get caught up. At that time we did not understand how stress and exposures to chemicals brought on her symptoms. Hospice nurses were in and out of her house 24/7 she had no reprieve from the onslaught of chemicals she was exposed to daily. Even for me the flurry of activity could be overwhelming.

Denise was fired from her job shortly after her Dad passed. She was still grieving the loss of her Dad when dealt this terrible loss. Outside of me I doubt anyone knew what happened. Fortunately she got a short term contract in a small Kansas town where the air was clean and the stress was low so she could recover while earning. This got her back on track until 2006.

The point I want to make is that it was always after periods of high stress, loss and emotional trauma that Denise's bouts of CFS/MCS reoccurred. She could hardly function after a business partner in India refused medical treatment for bi-polar and caused her to lose a huge investment there. Then her mortgage company made a false claim she had defaulted on her mortgage. She is still fighting the repercussions of this as reflected by her current court case. But in 2006 Denise had additional symptoms I'm all too familiar with; chronic pain. She blamed her inability to concentrate and focus solely on her ADHD but I suspected something else was contributing to it.

Denise did not plan to work in Los Angeles; her thoughts were on helping a friend recently widowed who was not coping well. Denise's daughter told her she couldn't afford a visit. Since her friend was in L.A. she decided to post her resume there. Almost immediately she got a call about a 3 month contract. It turned into a two year contract so Denise and I saw each other often. Denise was very resistant to my suggestion her pain might be fibromyalgia/arthritis. Another friend suggested rheumatoid arthritis so when she saved enough money to see a doctor she went to a rheumatologist who diagnosed her with fibromyalgia and arthritis. Like Denise I also have MCS but not nearly as bad as Denise. Unless you have this condition you cannot begin to imagine how hard it is to find housing to accommodate our needs; and how fearful the thought of losing your home is when it does accommodate.

I don't understand how anyone can get away with taking someone's home through a legal process without making sure the person whose life is about to be shattered is given notice of the action taken against them. I know Denise has had to represent herself because she can't afford an attorney; and this has been

extremely stressful for her. She told me about how insensitive the judge has been and how she is afraid to ask for accommodation because she knows he'll deny it and would just get angrier at her for asking.

I worked in special education so I know ADHD alone is a disability requiring accommodation under the ADA. Assistance, like when Denise's brother demanded his school let someone read the word questions to him so his inability to read, a symptom of his disability, did not cause discrimination against him by interfering with his ability to show his true math aptitude.

Fibro fog is an entirely different animal from ADHD and is horribly disruptive to one's life because it has no predictability. We have good days and people who see us on our good days think we are normal; but we also have very bad days, weeks, sometimes months where we can barely function. Outside of family and close friends who spend time with us no one sees us on our bad days because we can't get out of bed. Television ads for Lyrica make people think fibromyalgia is just about pain but it isn't. Fibro fog is a major symptom that interferes with your ability to think and function. And Lyrica doesn't work for everyone; especially for those of us with ADHD because a side effect is the inability to concentrate something we already struggle with. Then if you also have MCS any exposure to chemicals can cause what I think of as a mini seizure; your brain freezes.

Denise doesn't just have ADHD. She has a long history of CFS/MCS, arthritis and fibromyalgia that has continuously caused major disturbances in her life. The most serious bouts that resulted in her becoming so overwhelmed she couldn't function where she often forgets important things until it was too late have always followed periods of prolonged stress. Her current situation is no exception.

I most definitely believe she has been discriminated against by the courts and the trauma of this alone would be enough to trigger a serious episode of CFS/MCS and fibro fog. Her beloved dog, Koko, who was her constant companion died on December 20. Her youngest son had died on December 18, 1984. I lost my niece, who was like my own daughter, not long after Denise's son died so I know you never get over the pain even though you learn to cope and go on with life. Grief over Koko's death reopened the grief she felt at the anniversary of her son's death.

Sometimes with fibro and other immune related diseases you can't see the person's disability. Or it is on and off like a light switch and not visible to outsiders like it is for a person in a wheelchair. My introduction to this was a day when I was still working and having much pain. I knew I had to modify what I did that day or suffer for days. It was Monday and I had to work the next four days. I parked in a handicapped space at the bank and put up my placard. A man drove up and parked in the handicap space next to me. When I got out of the car he started screaming at me, "You're just fat and shouldn't use that space." He got out of his car and into his wheelchair still screaming at me.

It is a common misconception that the only disabilities that need accommodation are the ones the average person can recognize. This attitude fosters discrimination against those of us with hidden disabilities like Denise and me.

I so declare under penalty of perjury that the facts stated herein are true and correct to the best of my knowledge and personal experience.


Respectfully submitted,

Jaine Fahy

_____
Declarant

April 26, 2016

**DECLARATION OF JOANN BREITLING IN SUPPORT OF DENISE'S RESPONSE TO LNV'S OBJECTION TO DENISE'S MOTION TO APPOINT ME AS HER DISABILITY LIAISON AND TO SUPPLEMENT MY EARLIER DECLARATION**

I JoAnn Breitling ("Declarant") declare that I am over the age of eighteen (18) years and have personal knowledge of the facts set forth in this declaration, am not a party to this action, and if called as witnesses, could and would competently testify to the facts set forth herein. I make this decaration under penalty of perjury.

I make this declaration to support Denise's response to LNV's objection to her motion to appoint me as her disabilty liaison. I also supplement my earlier declaration because there wasn't time to attach documents to prove the things I declared were true by the April 18 deadline. The documents from June and July 2008 when we needed a payoff balance from MGC so we could refinance and they never gave it to us causing us to lose our opportuntiy to refinance at a lower interst rate and to become trapped with MGC are attached.

Many of the LNV/Beal victims had fraud at the origination of their loans. Denise and we are in this category. Also attached are our origination documents with Aames showing the broker forged our signatures. We never got TILA disclosures either.

Also attached are affidivits by my daughter and the attorney Wade Kricken explaining what they witnessed and experieced with judges presiding over some of the hearings in my case. And I've attached a few of my pleadings and the assignments of deed of trust in my case to show how Andy Beal forged assignments in all our cases. On May 17, 2013 I spoke with the notary Jeanne Stafford who notarized the signatures of Christopher Corcoran and K.C. Wilson on two assignments of deed of trust both executed on March 21, 2008 before LNV was had a business license in Nevada. She said that only she and K.C. Wilson were present in the room signing up to 500 documents a day; so how did Christopher Corcoran sign in her presence?

To address the objection that LNV's Counsel Ms. Richards made about me being a disability liaison for Denise because I too am a litigant against LNV; this is not a valid reason for the court to disqualify me from acting as Denise's disability liaison.

I have access to the PACER system and know how to use it. This is not something most people know how to do or have the ability to do. Because I too am a pro se litigant I understand the importance of responding to things on time and I know the normal time deadlines for responses.

Ms. Richards insinuates that I do not have the right temperment to do this but I have had serveral communications with her and I have always been courtious polite and professional with her. Ms. Richards quoted things from my pleadings in my own case as a means to spupport her position; but everyting I have said in my own pleadings I believe are true; and in time will be exposed as the truth. Her objection is simply that I share Denise's opposition to her client and his acitivities. This is not a valid reason to deny Denise my services.

Over the years Denise and I and the other LNV/Beal victims have become close friends and we help each other in many ways. When Cathy lost her job after the judge in her case granted summary judgment to LNV she too shut down and slumped into a very deep depression. She had no phone service, no water and no heat in her house. We reached out to her children, who were

also very worried about her. We pooled our resourses to help her get through it. She was sent an electric blanket, food and a cell phone so she could comminicate with the outside world again.

So many times when I or one of the other LNV/Beal victims have been feeling down and defeated Denise has reminded us to put our faith in God; to pray and ask for guidance. This is now her time of need and we want to help her. Each of us are very spiritual individuals. My husband and I are devout Catholics. We firmly believe God has brought us together for a reason bigger than ourselves and our own suffering. We have each given up so much in this fight. No one can understand what we need, not just in physical accommodation, but in spiritual support better than those of us who have together been victimized by the excessive greed of Daniel Andrew Beal. Beal's LNV and its counsel Ms. Richards may not like our position in this matter because it is alligned with Denise's position in opposition to theirs; but this is not a reason to disallow my services to Denise.

I will do this service for Denise free of charge. She doesn't have money to pay anyone. When she worked she used to pay people to assist her. The court will not pay for such services; and if asked they can claim it would place an unreasonable burden on the court and deny her the accommodation.

It is not fair or just for Ms. Richards who has adequate income to have accommodaiton for her disabilites because she or her employer can afford to pay someone of her own choice to assist her; but Denise is denied this same right to disability accommodation of her own choice.

I so declare under penalty of perjury that the facts stated herein are true and correct to the best of my knowledge and personal experience.


Respectfully submitted,


JoAnn Breitling


_____
Declarant

CERTIFICATE OF SERVICE

Petitioner hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record, pro-se parties via the Court's CM/ECF system, email, and/or regular mail, and/or certified mail with return receipt requested.

Respectfully Submitted,

/s/ Denise Subramaniam

*E X P E D I T E !!!*

fees + f/f/e 6-18-08

RECEIVED
JUN 18 2008
BORROWER RELATIONS
L Campbell
Not in system

# MGC Mortgage, Inc.

## Borrower Release of Confidential Information Authorization

To: (Entity & individual who is to receive the following information) _Beneficial Finance_
_1225 Belt Line Rd. #11 Garland TX 75040_

Date: _6-16-08_    Loan Number: _4938326 (from Wilshire)_

I, _Jo Ann Breitling_ an authorized signor on the above referenced

loan, hereby authorize MGC Mortgage, Inc. to release the following information (please indicate all that are

applicable):    _17100424_

|  | Current Loan Balance |
|---|---|
|  | Loan Due Date |
|  | Origination Date |
|  | Date Loan Paid in Full |
| ✓ | Other (must be specific) _entire Loan package_ |
| ✓ | Other (must be specific) _Current pay off_ |
|  | Other (must be specific) |
|  | Other (must be specific) |
|  | Other (must be specific) |

This authorization will remain in effect for 30 days. I understand that I may revoke this authorization at any time
before the records are disclosed, in writing, by mail, fax or e-mail. I further agree to release MGC Mortgage, Inc.
from any liability for providing this specific information as indicated above.

Signature: _Jo Ann Breitling_

Printed Name: _JoAnn Breitling_
_(214) 805-3068_

_972 530-2798_

_Please call Murlene at Beneficial_
_if you have any questions, Her number_
_is (972) 495-8118,_

MGC 0697



**Beneficial**
Member HSBC ⚭ Group

**FACSIMILE COVER SHEET**

Beneficial
1225 BELTLINE ROAD SUITE 11
GARLAND, TEXAS 75040

To: Borrow Relation
Fax: 972-530-2798

From: Merlen Hoy
Phone: 972-495-8118

Total pages + cover sheet: 2    Urgent ☑   Confidential ☑
Date: 7-3-08

Message:

Re: Breitling, Samuel G.
Breitling, JoAnn
5250 Hwy 98
Sachse, TX 75048
Loan # 17100424
SS# 0596.

Mrs Breitling has faxed you the MGC release form a this account about 2 days ago. and should be on file

Requesting the following to be sent
Copy of the ARM Note
Copy of the ARM Rider
And a Verification of Mortgage Payment history.

Please fax to 972 536. 2798

RECEIVED
JUL 03 2008
BORROWER RELATIONS
Not in System

This facsimile is intended only for the named recipient(s) and may contain privileged, confidential, or proprietary information. If you are not the intended recipient, you are hereby notified that any use, dissemination, or copying of this facsimile, or the taking of any action in reliance on the contents of this facsimile transmission, is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone to arrange for the return of the entire transmission, including any copies thereof, to us at our expense. Thank you.

"not in system"

MGC 0367

JUL-02-2008 03:55PM FROM-Beneficial Garland                           872530278G              T-866 P.001/002 F-955

**Beneficial**
*Member* HSBC ⟨X⟩ *Group*

**FACSIMILE COVER SHEET**

RECEIVED

JUL 0 3 2008

BORROWER RELATIONS

incomplete truth form

Beneficial
1225 BELTLINE ROAD SUITE 11
GARLAND, TEXAS 75040

| To: MGC Mortgage | From: Merlen Hoy |
|---|---|
| Fax: 972-530-2798 | Phone: 972-495-8118 |
| Total pages + cover sheet: 2 | Urgent ☑ Confidential ☐ | Date: 7-2-08 |

Message:

Attached you will find the borrower's authorization form

on        Breidling, Samuel G
          Breidling, Jo Ann
          5250 Hwy 78
          Sachse, Tx 75048

Loan # 17100424
SS # 0586

Have requested a copy of the mortgage - ARM note - and rider. Also need a verification of mortgage + be sent to

          Merlen Hoy
          Beneficial
          1225 Beltline #11
          Garland, Tx 75040
          972. 495. 8118
          972. 580-2798 fax

This facsimile is intended only for the named recipient(s) and may contain privileged, confidential, or proprietary information. If you are not the intended recipient, you are hereby notified that any use, dissemination, or copying of this facsimile, or the taking of any action in reliance on the contents of this facsimile transmission, is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone to arrange for the return of the entire transmission, including any copies thereof, to us at our expense. Thank you.

MGC 0371

# MGC Mortgage, Inc.

7195 Dallas Parkway
Plano, Texas 75024
Tel 866-544-9820
Fax 469-229-8601

## Fax Transmittal

| | |
|---|---|
| **To:** | Merlene |
| **Company:** | Beneficial |
| **Fax Number:** | |
| **Pages:** | 2 (including cover page) |
| **From:** | Borrower Relations |
| **Telephone:** | 866-544-9820 |
| **Date/Time:** | 07/03/08 |
| **RE:** | Brectling |

**Comments:**

MGC Mortgage, Inc ("MGC") has received your faxed request for information regarding the above referenced individuals. Federal law prohibits MGC from releasing information to a third party without the written consent of the borrower. The authorization form you sent is incomplete and your request letter is hard to read. Please resend.

Attached, you will find MGC's Borrower Release of Confidential Information Authorization. The borrower must complete, sign, and return the form in order for MGC to proceed with your request.

This completed form can be mailed to the address above or faxed to:

MGC Mortgage, Inc
Attn: Borrower Relations
Fax: 469-229-8601

Please be sure to include the borrower's name and loan number on all correspondence.

Thank you,

Borrower Relations
MGC Mortgage, Inc.

*This message is intended for the use of the individual or entity to whom it is addressed, and may be information that is PRIVILEGED and CONFIDENTIAL. Any review, retransmission, dissemination, other use of, or actions taken in reliance upon this information by persons or entities other than the intended recipient is prohibited. Please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.*

MGC 0370

2nd Request



RECEIV

JUL

# MGC Mortgage, Inc.

## Borrower Release of Confidential Information Authorization

To: (Entity & individual who is to receive the following information)    Beneficial Finance (Murlene)
1225 Belt Line Rd Ste 11
Garland TX 75040

Date:    7-14-08    Loan Number:    17100424

I,    JoAnn Breitling    an authorized signor on the above referenced

loan, hereby authorize MGC Mortgage, Inc. to release the following information (please indicate all that are applicable):

RECEIVE

JUL 16 2008

_____ Current Loan Balance

_____ Loan Due Date

_____ Origination Date

_____ Date Loan Paid in Full

_____ Other (must be specific)    _____

_____ Other (must be specific)    _____

_____ Other (must be specific)    _____

_____ Other (must be specific)    _____

_____ Other (must be specific)    _____

This authorization will remain in effect for 30 days. I understand that I may revoke this authorization at any time before the records are disclosed, in writing, by mail, fax or e-mail. I further agree to release MGC Mortgage, Inc. from any liability for providing this specific information as indicated above.

Signature:    JoAnn Breitling    (Co-borrower
SAmuel G. Breitling)

Printed Name:    JoAnn Breitling

SS    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

&    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

Please call Murlene at (972) 495-8118
and verify what she needs.    **MGC 0699**

5250 Hwy 78
# 750-112
Sachse TX 75048



NORTH TEXAS P&DC
TX 750 4 T
14 JUL 2008 PM

CS

MGC Mortgage Inc
7195 Dallas Pkwy
Plano TX 75024

RECEIVED
JUL 15 2008
By

75024+4922

MGC 0700

# DOCUMENT TYPE CHECKLIST

Date: _____

Prepared by: _____ Dept. _____ Ext. _____

Borrower: _____ Loan No.: 117 100424.

Check the box for the type of FILE and the DOCUMENT TYPE

## NOTE

- Note
- Rider(s)/Addendum(s)
- Allonge(s)
- Note Modification(s)
- Assumption Agreement
- Judgment
- Guaranty
- Letter of Credit
- Stock Certificates/CD

## COLLATERAL

- Mortgage/Deed of Trust
- Assignment(s) of Mortgage/Deed of Trust
- Modification(s)
- Assignment of Leases and Rents
- Assignment of Assignment of Leases & Rents
- Lease(s)
- Loan Agreement
- Title Policy
- Title Commitment
- Security Agreement
- UCC-3-Continuations
- UCC-3- Assignment
- UCC-3 other
- UCC-1
- Title(s) Car/Mobile Home
- Collateral/Stock Pledge
- Assignment of Life Insurance
- Life Insurance Policy
- Subordination Non Disturbance Attornment Agree
- Tenant Estoppel Agreements
- Lien/Title Searches
- Aircraft Security Agreement
- Participation Agreement
- Real Estate/Land Sale Contract
- Settlement Agreement
- Special Assessment
- Mechanics Lien
- License/Permit

## CREDIT

- ARM Adjustment Notifications
- Correspondence
- Year End Statements
- Hello/Good-Bye/Special Campaign Letters
- Appraisal
- BPO
- Site X
- Survey
- Environmental Report
- Property Condition Report
- Payment History
- Credit Report
- Tax Returns
- Financials
- Application
- Operating Statements
- Rent Rolls
- Final HUD 1
- Truth In Lending
- Transmittal Summary (Form 1008)
- Disclosure-Other
- Loan Committee Profile
- REO Memo/Profile
- Bankruptcy Plan
- Default
- Working File
- Premium Mortgage Insurance (PMI)
- Warranty Deed
- Corporate Documents

## T & I

- Escrow Statements
- Property Insurance
- Flood Hazard Determination
- Flood Certificate
- Tax Certificate
- Property Tax - County
- Property Tax - City
- Property Tax - School
- Property Tax - State

**MGC 0701**

02/03/2009

OCT-25-2000  13:40    AAMES HOME LOAN    P.01/02

# Aames

## APPROVAL TERMS and CONDITIONS

Homestead  Cash Out

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM TX01446E.104
A.A.M.
ADV.

☐ CORRESPONDENT

| BROKER NAME: | | PHONE | FAX |
|---|---|---|---|
| ACCOUNT EXECUTIVE: | | PHONE | FAX |
| ACCOUNT MANAGER: | | PHONE | FAX |

| PROGRAM | PRICING ADDS | PURPOSE/OCCUPANCY | PROPERTY TYPE |
|---|---|---|---|
| Code 331 | ☐ Prepay-Buyout | ☑ Refi | ☑ SFR |
| Description | ☐ Prepay Buyup (Lower rate for 5 yrs) | ☐ Purchase | ☐ Manufactured |
| | ☐ Non-Owner/Second Home | ☑ Owner Occupied | ☐ Units: |
| | ☐ 80/20 or No Nonsense | ☐ Non Owner Occ. | ☐ Condo |
| Lien Position | ☐ NTV ☐ Lite Doc | ☐ Second Home | ☐ PUD |
| 1st | ☐ Jumbo ☐ Mfd. Housing | | Leasehold Land: Yes ☐ No ☐ |

| | Start Rate | 12.375 | Approval Date | 10-17-00 | Expiration Date | 11-17-00 |
| Flood Grade or | Qual Rate | | Rate Sheet | 9-1-00 | Purchase Price | |
| Surp Score 563 | LTV | 80 | Guideline Date | 9-1-00 | Appraised Value | 162,000 |
| | Margin | 10.00 | Cash Out/ | | Review Value | |
| | CLTV | N/A | Funds to Close | 20,931 | Loan Amount | 129,600 |

### APPROVAL MODIFICATIONS:

AAMES FEES

BROKER FEES

### SPECIAL CONDITIONS:
(PTD is prior to ordering loan documents. PTF is prior to funding.)

1. Original package to match submission package. (Broker credit report max 60 days at funding)
2. Original Appraisal (by Aames approved appraiser), acceptable to Aames Home Loan.
3. Original Appraisal Review with all appraisal conditions approved.
4. Preliminary title. No encroachments or survey exceptions allowed. Remove all exceptions except item(s) #:
5. Insured Closing Protection Letter, specific to closing agent, dated within 45 days of funding.
6. Wire Instructions.
7. Typed loan application (1003), signed and dated; ☐ with original signatures. Complete sections: ☐ 10+9
8. Handwritten application (1003), signed and dated; ☐ with original signatures. Complete sections:
9. Demands on all subject mortgages. Must be current at funding. exp. 10/29/00
10. Original signed federal tax returns for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___.
11. W-2 statements for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___.
12. Copy of current paycheck stub for Borrower (expires 9/26 ), Co-Borrower (expires _____).
13. Verbal Verification of Employment by Aames Home Loan.
14. Current signed original P&L statement for: _____ (expires _____).
15. Satisfactory evidence of self employment.
16. Copy of subordinated mortgage and note to reflect approved subordinate financing as follows:
    Amount $_____ CLTV_____ % Monthly payment $_____ Maturity
17. Verification of deposit in closing (_____ % down payment $_____ ) or ($_____ short to close).
18. Source and 2 months seasoning of funds in Condition #17.
19. Insurance Loss Payee:    AAMES HOME LOAN, its successors and/or assignees
    P.O. Box 57093, Irvine, California 92619-7093
    Insurance Coverage Covering One of the Following:
    Loan Amount / Cost New / Guaranteed Replacement/Extended Replacement Coverage
20. Condo Association Questionnaire or other HOA Cert. with current budget and P&L.
21. Original signed Indemnification Letter.
22. HUD-1 Settlement Statement from title of
23. Broker to be approved by Aames.
24. Flood Certification (Aames Home Loan to obtain).
25. Original signed Section 32 Disclosure. (If applicable.)
26. Power of Attorney.
27. SEE ATTACHMENT "A" for debts and liens to be paid off through closing and/or additional conditions.

By signing below, I / we acknowledge that the above conditions must be satisfied prior to funding the loan. Additionally, "Broker" or Broker's Representative acknowledges that all fees and terms are correct as stated above and authorizes ordering loan documents.

| Samuel D. Breitling | Date | Broker | Date |
|---|---|---|---|
| Borrower | | | |
| JoAnn Breitling | Date | Broker Name | 10-18-00 |
| Borrower | | | |

OCT-19-2000  15:38

Broker forged our signatures without our knowledge or permission.

MGC 0628

OCT-25-2000  13:40     AAMES HOME LOAN                    P.02/02

TOTAL P.02


**Aames**

BREITLING, SAMUEL
BREITLING, JOANN
1754 CORNWALL LANE
SACHSE, TX 75048

GSM: TX014446-104
AAM:
ADV.

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

> **ALL TAXES, LIENS AND
> JUDGMENTS OF RECORD**

| Creditor | | Approximate Balance |
|---|---|---|
| 1. Wells Fargo | xta | $ 81,298 |
| 2. GMAC | cons | 7088 |
| 3. Community Cu | tt | 14,768 |
| 4. Chase | | 1486 |

*(margin notes: "w/p:" "waive 4% ada do debt not")*

## ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:

(PTD is prior to ordering loan documents. PTF is prior to funding)

PTD  PTF

____ 28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.
____ 29. Max fees and charges from all associated parties limited to 3%. title to p ex scale an ust cl strut
____ 30. Tax cert. for subject.
____ 31. No cash out to borrower.
____ 32. Survey to be satisfactory to Aames and title.

____ 33) If there is issue T-42 indorsement + assure Aames of no A-6 loans in last 12 months.
____ 34) Provid ean executed original Aames 12 day discl
____ 35) E vial Prin Res mtg loan + obt of prin full
____ 36) E vial at Ins (3u/AFSAq Llecetors + Citibk) have been cancelled for re payment duoto disability.
____ 37) E vial monthly CCC S payment + acct in good standing.
____ 38) Com de to e vial acct is presently current (notincsl)
____ 39) E vial Jo Anns disability to cont min of 3yrs.

## STANDARD CLOSING CONDITIONS:

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.

- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property at the closing unless previously approved by Lender.

*Samuel D. Breitling*
Borrower

*Joann Breitling*

*Frances Christensen Brassau*

TOTAL P.02

Broker forged our signatures without our knowledge or our permission

MGC 0627

# Aames

| | |
|---|---|
| Approval Date: | |
| Expiration Date: | |
| Rae Sheet Date: | 4-1-00 |

VSP
TX spec - S01704 CORNWALL LANE
SACHSE, TX 75048

BREITLING, SAMUEL
BREITLING, JOANN

OSM: TX014446-104
AAM:
ADV:

TX spec (official requires title too, don't have TX title w/out. OK to give special have approval + want... Purchase Loan)

| Purchase Price: | Base rate | | Base Margin | Base Points | Term | Type | Occupancy Loan |
|---|---|---|---|---|---|---|---|
| Kirk's | 12.875 | 6.00 | | 360 | 0/0-SFR | B5 |

| Loan Amount: | Appraisal | Review | | LTV | Jr. Lien: | CLTV |
|---|---|---|---|---|---|---|
| 129,600 | 162,000 | | 80 | | | |

| Grade | Program | Index | Rate+Adds | Margin+Adds | Pts + Adds | Qualifying Rate: |
|---|---|---|---|---|---|---|
| 331 | | 6.76 | 12.875 | 6.00 | <1> | 12.875 |

| Doc Type: | | Occupancy: | | | Property Type: | | |
|---|---|---|---|---|---|---|---|
| Rate: | Margin: | Rate: | Margin: | Points | Rate: | Margin: | Points |

| Fee B/Out: | | Prepay: | Rate: | Margin: | PTS | Funds to Close |
|---|---|---|---|---|---|---|
| Rate: | | | | | | |

## Mortgage History(ies)

| P/O | Res.Mortgage(s) or Rent | Balance | Payment | Rating(s) |
|---|---|---|---|---|
| ✓ | Wells Fargo | 81298 | 1482 | (917) | ancr = cur, 0x30 8/00 |
| ✓ | Cons debt | | 23483 | | mtg stmt = alive for 11/00 |
| | Total | | | |

ALL MORTGAGES REFLECTED ON CREDIT BUREAU    [Y + stmt]

OPEN BANKRUPTCY?   N/A

Rent/Mortgage Grade

New Payment:

## Consumer Credit

| Current | |
|---|---|
| 30's | |
| 60's | |
| 90's | |
| O/Coll/Judg | |
| % Derog: | |
| Grade: | |

Primary Ber:
Qualifying Score: 563

Final Grade:
Pricing Score:

| | Income: | Score 1 | Score 2 | Score 3 | Tier Scoring |
|---|---|---|---|---|---|
| Borrower 1 | | 570 | 539 | 563 | Jm 12/16 |
| Borrower 2 | Jmm | 524 | 451 | 516 | |
| Borrower 3 | | | | | |
| Borrower 4 | | | | | |

## Monthly Income                                     ## Monthly Debt(s)

Indicate Gross ups (Y/N)

Residence:

| | | | |
|---|---|---|---|
| Borrower 1 | 4884 | Rent | |
| Borrower 2 | -72+1 2545 | Res. PITI+HOA | |
| Borrower 3 | | 2nd Hm PITI | |
| Borrower 4 | | | |
| Subject R.Inc | | Bank Statement Avg: (from wrksht) | |
| SREO | | | |

| | Qualifying |
|---|---|
| Residence Mortgage | 1420.98 |
| Subject Junior Lien | |
| Second Home | |
| Subject Actual Taxes | 230.35 |
| Subject Actual Insurance | 3780 |
| Subject HOA | |
| Consumer | 1396  2332 |
| SREO Losses (subject n/a) | 306  GMAC |
| Subject Rental Loss (if applicable) | 488  CCU |
| Other | 148 |
| Other | |
| Other | 4021.13 |

Total: 5613
NOTE: 4434

Income for credit scoring purposes does NOT include R.E. Income.
est title 1427

| | Total Monthly Debt: | 4021.13  3078.13 |
| | Debt Ratio | 7164  5480 |
| | | 54.09 |

c/o   Total Payoffs:   81298 + 23483
30.93   Aames Fees:   <94 + 150>
Broker Fees:   3888 + 0
108,869

Section 32   Aames title = 1.28
Broker = 3.00
Approved By: _____
Date: 10-17-00
Date Printed:  11/15/99

Adverse Action?   Y    Reason Code:   D

| Disposable Income | 2534 |
| Reduce Debt by (to Qualify) | Y |
| Program Max Debt Ratio: | 55 |
| Program Max LTV: | 80 |

## Underwriter Comments:

## AAMES HOME LOAN CONFIRMATION OF CLOSING

under: TERRJ ECKLES
Ph.: (949) 794-0477    Fax: (949) 794-0584
Loan $: 129,600
Purchase Price: $ _____
Must close on: 10-20-00

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

All conditions marked below must be completed and returned with signed loan documents. Failure to comply will invalidate this transaction.

➲ Please fax the following items to the above referenced fax # *prior to closing*:

Complete wire instructions. - Must reference borrowers name and loan number on wire instructions.
Estimated HUD-I: Prior to closing, showing the required payoffs and/or disbursements. (All payoff amounts are ESTIMATES only, title/closing agent to verify actual balances.)

X    All liens/judgments of record        X    All taxes current

X    Wells Fargo                               $ 81,298
X    State Farm Ins.                           $ 1272.50

Settlement /Closing Fee to Closing Agent (incl. Atty/Sub Escrow/Wire Fee) not to exceed $_____.

Power of Attorney - when applicable - a) must be approved by Aames *prior to closing*; &
    b) must be recorded concurrently with security instrument (if not previously recorded)

FUNDER TO CONFIRM W/ CLOSER THAT ALL LIENS OF TITLE WILL BE PD THRU CLOSE

➲ Conditions to be met *at closing*:

The APPROVAL TERMS of this loan require that you receive from the BORROWER
CASH in the amount of $_____.  NO EXCEPTIONS.  COPY OF CASHIERS
CHECK OR WIRE TRANSFER RECEIPT IS REQUIRED. *CLOSING AGENT IS NOT*
*AUTHORIZED TO DISBURSE FUNDS UNLESS CASH FROM BORROWER IS VERIFIABLE.*
Typed 1003: Signed & dated, Broker to provide.  Complete Section submit original signed
H/W 1003: Signed & dated, Broker to provide.  Complete Section _____
Mortgage to be executed/notarized: (Include notary stamp/seal). Required Riders to be attached:
    X  ARM ___ Condo ___ PUD ___ 1-4 Family ___ Rider A - 2 Yr. Prepay
    N/A  Assumption Rider ___ Defferal Rider ___ Rider B - No Prepay
    ***TX ONLY ___ Renewal & Extension ___ Vendor's Lien/Warranty Deed
Arbitration Agreement and Fees & Charges Disclosure: MUST be signed at closing, no exceptions.
    *Closing Agent is NOT AUTHORIZED TO DISBURSE FUNDS unless disclosures are signed*
Notice of Right to Cancel: All rescission dates to be completed.
Executed copy of Subordinated Mortgage & Note*:
Amt. of $_____    Mo. Pmt. $_____    Maturity date of _____
    *If terms differ from above, need written approval from Aames Home Loan.*
Closing Agent to comply with *Specific & General Closing Instructions*. (Included in document pkg.)
Tax Information Certification: To be completed by closing agent.
Survey and/or Survey Affidavit in Lieu of Survey: *NO SURVEY EXCEPTIONS ON FINAL T.P.*
Final HUD-I: signed & dated
___ Correct as follows: _____

Final Title Policy: Title to issue the following ALTA endorsements:
    X  ARM (6) X T-42 (4) ___ PUD (5) ___ Mfg. Home (6) X EPL (8.1) ___ Form 9 (Fla. only)
    *Approval Terms & Conditions w/ Attachment "A" - to be signed by all borrowers (2 pages)*
Confirmation not to newd

➲ Conditions to be met by *Aames Home Loan*, prior to wiring of funds:
X    _____
X    _____

Rev 11/16.99

MGC 0647



BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

**ALL TAXES, LIENS AND
JUDGMENTS OF RECORD**

| | Creditor | | Approximate Balance |
|---|---|---|---|
| eff: | 1. Wells Fargo | tg | $ 81,298 |
| waive to | 2. GMAC | cons | 7088 |
| xda debt not | 3. Community Ct. | | 14,769 |
| | 4. Chase | | 16,050 |
| | Chase | | |

**ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:**
( PTD   is prior to ordering loan documents. PTF is prior to funding)

PTD  PTF

28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.

29. Max fees and charges from all associated parties limited to 3%. *title to provide an wet cl stmt*

30. Tax cert. for subject.

31. No cash out to borrower.

32. Survey to be satisfactory to Aames and title.

33) Title to issue T-42 indorcement + assure Aames of no A-6 loans in last 12 months.

34) Provide loan executed original Aames 12 day discl.

35) Evid. Prin Res. Mtg loan + old + paid in full

36) Evid. at. Ins. (3w/AFSA + lienter + citites) have been cancelled for re pay ment due to disability.

37) Evid monthly CCCS payment + acct in good standing.

38) Com. Ct. to evid acct is presently current (not in col)

39) Evid JoAnn's disability to cont. min of 3 yrs.

**STANDARD CLOSING CONDITIONS:**

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.

- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property at the closing unless previously approved by Lender.

Borrower _____

Borrower _____

Broker _____

MGC 0623

# Aames

*Homestead Cash Out*

## APPROVAL TERMS and CONDITIONS
120 days up (No sale later than 10/24)

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

☐ CORRESPONDENT

| BROKER NAME: 1st Home Mtg. | PHONE (972)671-5363 | FAX (972)671-7227 |
|---|---|---|
| ACCOUNT EXECUTIVE: | PHONE: | FAX: |
| ACCOUNT MANAGER: Arlene | PHONE (972)445-7006 | FAX (972)445-8202 |

## PROGRAM

Code 331
Description 31/30
Lien Position: Must
1st

## PRICING ADDS
☐ Prepay Buyout
☐ Prepay Buyup (Lower rate for 5 yr.) TX
☐ Non-Owner/Second Home 1 Point
☐ 80/20 or No Nonsense
☐ NIV ☐ Lite Doc - Must have
☐ Jumbo ☐ Mfd. Housing 10/34/00

## PURPOSE/OCCUPANCY
☑ Refi
☐ Purchase
☑ Owner Occupied
☐ Non Owner Occ.
☐ Second Home

## PROPERTY TYPE
☑ SFR
☐ Manufactured
☐ Units: 2☐ 3☐ 4☐
☐ Condo
☐ PUD
Leasehold Land: Yes ☐ No ☐

| | | |
|---|---|---|
| Final Grade or Snap Score | 5b3 | Start Rate 12.375 |
| | | Qual Rate 12.375 |
| | | LTV 80 |
| | | Margin 6.00 |
| | | CLTV N/A |

12.375
Approval Date 10-17-00
Rate Sheet 9-1-00
Guideline Date 9-1-00
Cash Out/ Funds to Close 20,931

Expiration Date 11-17-00
Purchase Price Refi
Appraised Value 162,000
Review Value Supported
Loan Amount 129,600

## APPROVAL MODIFICATIONS:

| MOD DATE | LOAN AMOUNT | LTV | O.P./YSP | START RATE | MARGIN | CREDIT GRADE | DOC TYPE | PROGRAM CODE |
|---|---|---|---|---|---|---|---|---|
| 10/19 | 129,600 | 80 | 5/3 | 12.375 | 6.00 | 563 | F/D | 331 |
| MOD DATE 10/19 | LOAN AMOUNT 129,600 | 80 | 5/3 | START RATE 12.375 | MARGIN 6.00 | CREDIT GRADE 563 | DOC TYPE F/D | PROGRAM CODE 331 |

## AAMES FEES

| ORIGINATION FEE POC 675 | YIELD SPREAD PREMIUM | UNDERWRITING FEE ⊖ | ASSUMABILITY ☐ YES ☑ NO |
|---|---|---|---|
| TAX SERVICE FEE POC | FLOOD CERTIFICATION POC | OTHER POC D<150>POC | PREPAYMENT PENALTY ☐ YES (# of Mos.) ☑ NO |

## BROKER FEES

| 3 POINTS 3,800 | PROCESSING FEE ⊖ | APPRAISAL FEE ⊖ | CREDIT REPORT FEE |
|---|---|---|---|
| OTHER | | | ESCROW IMPOUNDS ☐ YES ☑ NO |

## SPECIAL CONDITIONS:
(PTD is prior to ordering loan documents. PTF is prior to funding.)

☐ INTL ☐ PTD ☐ PTF

| | | |
|---|---|---|
| PD ✓ | | 1. Original package to match submission package. (Broker credit report max 60 days at funding.) Expires 10/6 |
| PD ✓ | | 2. Original Appraisal (by Aames approved appraiser), acceptable to Aames Home Loan. Need resume |
| PD ✓ | | 3. Original Appraisal Review with all appraisal conditions approved. |
| PD ✓ | | 4. Preliminary title. No encroachments or survey exceptions allowed. Remove all exceptions except item(s) #: |
| PD ✓ | | 5. Insured Closing Protection Letter, specific to closing agent, dated within 45 days of funding. |
| PD ✓ | | 6. Wire Instructions. |
| PD ✓ | | 7. Typed loan application (1003), signed and dated; B with original signatures. Complete sections: 8, 10+9 |
| PD ✓ | | 8. Handwritten application (1003), signed and dated: ____ with original signatures. Complete sections: |
| PD | | 9. Demands on all subject mortgages. Must be current at funding. exp. 10/27/00 |
| | | 10. Original signed federal tax returns for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___. |
| | | 11. W-2 statements for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___. |
| PD ✓ | | 12. Copy of current paycheck stub for Borrower (expires 10/26). |
| (Appd) | | 13. Verbal Verification of Employment by Aames Home Loan. |
| | | 14. Current signed original P&L statement for: ____ (expires ____). |
| | | 15. Satisfactory evidence of self employment. |
| | | 16. Copy of subordinated mortgage and note to reflect approved subordinate financing as follows: Amount $____ CLTV ____% Monthly payment $____ Maturity ____. |
| | | 17. Verification of deposit in closing (____% down payment $____) or ($____ short to close). |
| | | 18. Source and 2 months seasoning of funds in Condition #17. |
| PD ✓ | | 19. Insurance Loss Payee: AAMES HOME LOAN, its successors and/or assignees P.O. Box 57093, Irvine, California 92619-7093 |

Insurance Coverage Covering One of the Following:
Loan Amount / Cost New / Guaranteed Replacement/Extended Replacement Coverage

| | | |
|---|---|---|
| | | 20. Condo Association Questionnaire or other HOA Cert. with current budget and P&L. |
| | | 21. Original signed Indemnification Letter. |
| | | 22. HUD-1 Settlement Statement from sale of ____ |
| | | 23. Broker to be approved by Aames. |
| PD ✓ | | 24. Flood Certification (Aames Home Loan to obtain). |
| | | 25. Original signed Section 32 Disclosure. (If applicable.) |
| | | 26. Power of Attorney. |
| | | 27. SEE ATTACHMENT "A" for debts and liens to be paid off through closing and/or additional conditions. |

By signing below, I / we acknowledge that the above conditions must be satisfied prior to funding the loan. Additionally, "Broker" or Broker's Representative acknowledges that all fees and terms are correct as stated above and authorizes ordering loan documents.

**No signatures**

| Borrower | Date | Broker | Date |
|---|---|---|---|

| Borrower | Date | Broker Name | |
|---|---|---|---|

MGC 0622

Oct-19-00 02:24P 1ST HOME MORTGAGE

TOTAL P.02

 Aames

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

**ALL TAXES, LIENS AND
JUDGMENTS OF RECORD**

| Creditor | | Approximate Balance |
|---|---|---|
| 1. Wells Fargo | 1tg | $ 81,298 |
| 2. GMAC | cons | 7,088 |
| 3. Community Cu | " | 14,769 |
| 4. Chase | " | 16,316 |

*(handwritten left margin: upb / waive / ado to / debt rat / waive to / ado to debt rat)*

ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:
(PTD is prior to ordering loan documents. PTF is prior to funding)

PTD   PTF
28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.
29. Max Fees and charges from all associated parties limited to 3%. title to provide an est cl stmt
30. Tax cen. for subject.
31. No cash out to borrower.
32. Survey to be satisfactory to Aames and title.

33) Title to issue T-42 indorsement + assure Aames of no A-6 loans in last 12 months.

34) Provide an executed original Aames 12 day disc

35) Evid Prin Res. Mtg loan + old f prd in full

36) Evid st. lns (3w/ AFSA, Twestar + Citibk) have been cancelled for repayment due to disability.

37) Evid monthly CCC's payment + acct in good standing.

38) Com. Cu to evid acct is presently current (not in col)

39) Evid Joann's disability to cont. min of 3 yrs.

## STANDARD CLOSING CONDITIONS:

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.

- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property of the closing unless previously approved by Lender.

**Only the Broker's signature**

MGC 0630

Borrower

_____

P.03/02
OCT-19-2000  15:39                    7024517222                    97%                                    P.02

# TEXAS DOCUMENT ORDER FORM

APPLICATION # TX014446.104 BROKER APPROVAL # TX03736 STATUS Approved

BROKER DOCS: Yes ☐ No ☑ 80/20 1ST: Yes ☐ No ☑ (If "yes" attach page 3 of Doc Ord.)

*(If Broker Docs, broker to be approved in state where subject is located prior to ordering docs __ )*

BROKER NAME: 1st Home, mtg. 1ST PAYMENT: 12-1-00

PROGRAM CODE: 331 ✓ PROGRAM DESCRIPTION: 3/30

PURPOSE: PURCHASE ☐ REFINANCE ☑

OCCUPANCY: OWNER OCCUPIED ☑ NON-OWNER OCCUPIED ☐ 2ND HOME ☐

CLOSING DATE: 11-20-00 ✓

**FULL REDRAW** (affect loan terms on Note or Deed/Mtg., borrower names, property address): YES ___ NO ☒

NO SAME DAY FULL REDRAWS / **PARTIAL REDRAW** (affect TIL, GFE, RTC but not Section 32): ___

Redraws: Pls. complete new Document Order Form containing Application #, "Borrower" Information below, Changes made & need legal description. Acct. Mgr. to forward Modified Approval Terms & Conditions to Closer. Funder to hand file to Doc Dept.

## BORROWERS...

BORROWERS: Include all persons (whether Titled or Non-Titled) responsible for repayment of loan AND/OR whose income was used to qualify. ✓

BORROWER #1: Samuel H. Breitling SS#: ___

BORROWER #2: Jo Ann Breitling SS#: ___

BORROWER #3: ✓ ✓ SSN: ___

BORROWER #4: SSN: ___

BORROWER #5: SSN: ___

BORROWER #6: SSN: ___

MARRIED ☑ UNMARRIED ☐

COMPLETE VESTING (Include any and only those persons who are to be vested on title WHETHER OR NOT they are considered as borrowers. DO NOT include not titled spouses in this section.) (If Non-Borrower, must sign Security Instrument, Riders, TIL, RTC, and SECTION 32): ___

NON-TITLED SPOUSE: ___

(Include spouses who are not to be vested but by STATE REQUIREMENT must sign Security Instruments, Riders, TIL, RTC and SECTION 32 DISCLOSURE).

MAILING ADDRESS (for non-owner or second home): ___

CITY: ___ STATE: ___ ZIP: ___

## ESCROW/CLOSING AGENT... ✓

COMPANY: Fidelity Title CONTACT NAME: Andy

ADDRESS: 333 West Campbell Rd PHONE NO.: (972) 889-2022

Ste. 130 Richardson TX 75080 FAX NO.: (972) 889-2021

TITLE COMMITMENT DATE: 11-4-00 PARCEL #: 48 0990 006 0060010

TAX MESSAGE: "DUE ALL PAID" SPECIAL ENDORSEMENTS: ALTA 4 ☐, ALTA 5 ☐,

111.5/ARM/ALTA 6 ☐, 116.6/ALTA 7 ☐, ALTA 9 W/O EXCEPTIONS ☐, | NEED:100, 116, 8.1 |

APPROVED ITEMS: ___

SEND DOCS TO: ___BRANCH ___DIGITAL ✓ CLOSING AGENT ___DIGITAL
___FEDEX ___FEDEX

## PROPERTY... ✓ ✓ ✓

PROPERTY ADDRESS: 1704 Cornwall Lane

CITY: Sachse STATE: TX ZIP: 75048

COUNTY: Dallas ✓

PROPERTY TYPE: ☒ SFR ☐ MANUFACTURED HOME ☐ UNITS: 2 ☐ 3 ☐ 4 ☐

☐ CONDO ☐ PUD

CONDO/PUD PROJECT NAME: ___ FLOOD ZONE FROM FLOOD CERT: C

## TERMS...

REVIEW VALUE: $ supported ✓ PURCHASE VALUE: $ ___

2ND MORTGAGE: $ ___ LOAN AMOUNT: $ 39,600 ✓

LENDER: ___ TRUSTEE: ___

INTEREST RATE: 12.375 ✓ MARGIN: 6.00 LTV: 80 ✓

PREPAYMENT PENALTY: YES ☐ NO ☒ PREPAY # MOS.: ___

ASSUMABILITY: YES ☐ NO ☒

SECTION 32: YES ☐ NO ☒ SEC. 32 DISCLOSURE ATTACHED: ___

QUALIFYING DEBT RATIO: 51% (PREPAYMENT BOUGHT OUT IF IN 32 & OVER 50%)

CREDIT GRADE: 563 DOCUMENTATION TYPE: F D ☒ STATED/NIV ☐ LD ☐

CREDIT SCORE: BORROWER: 563 CO-BORROWER: ___

Appraiser Name: Ben M. Davis Jr. Status: faxed resume etc.

No app

MGC 0631



## Aames Home Loan, Corporate Office
3347 Michelson Drive, Suite 300
Irvine, CA 92612
(949) 794-0100 ☐ FAX (949) 794-0230

# PRE-FUNDING CHECK

### IDENTIFICATION INFO . . .

| | | | |
|---|---|---|---|
| Loan #: | TX014446 | Est Funding: | / / |
| Investor #: | 9825282 | Actual Funding: | / / |
| Investor Code: | AAMES | Office: | TX01 |
| Broker Id: | TX03736 | Agent Code: | 104 |

### BORROWER INFO . . .

| | | |
|---|---|---|
| Borrower: | BREITLING, SAMUEL G. | Address: 1704 CORNWALL LANE |
| Borrower #2: | BREITLING, JO ANN | SACHSE, TX 75048 |

### LOAN INFO . . .

| | | | | | |
|---|---|---|---|---|---|
| Loan Type: | CONV | LTV: | 80.000% | Debt Ratio: | N/A / 54.09 |
| Loan Term: | 360 | CLTV: | | Orig Appr Val: | $162,000.00 |
| Lien Position: | 1ST | Loan Purpose: | REFINANCE | Rev Appr Val: | $162,000.00 |
| Credit Grade: | | Cash Out?: | YES | Purchase Price: | |
| Credit Upgrade?: | NO | Section 327: | NO | Broker Doc?: | NO |
| Occupancy: | YES | Mort Bank Div?: | NO | Assumability: | MAY NOT |
| Document Type: | FULL | County: | DALLAS | Leasehold Prop?: | NO |
| Flood Deter#: | 00105482985 | Program: | 331 | Approval Date: | 10/17/2000 |
| Property Type: | SFR | Condo/Pud: | | | |

### NOTE INFO . . .

| | | | | | |
|---|---|---|---|---|---|
| Adj Type: | ARM | Max Rate: | 18.375% | Grace Period: | 10 Days |
| Start Rate: | 12.375% | Min Rate: | 12.375% | Late Payment %: | 10.0% |
| Gross Margin: | 6.000% | Note Date: | 10/20/2000 | First Payment: | 12/01/2000 |
| Initial Rate Cap: | 3.000% | Loan Amount: | $129,600 | PrePay # Mos: | |
| Subsequent Cap: | 1.000% | P&I: | 1,370.61 | Total Impounds: | |
| Rate Adj: | 36 | Prepay Penalty: | NO | Total Payment: | 1,370.61 |
| Lifetime Cap: | 6.000% | Last Pmt Date: | 11/01/2030 | | |

### LOAN CHECKER RESULTS . . .

```
Missing Credit Grade.
WARNING -It's a Refi, Owner occupied loan, the Sec32 calculation test is required.
Estimate Funding Date can't be blank.
WARNING -NoteDate must be 12days more than DisclosureDate
Funding Date can't be blank.
Owner occupied Texas loan, the CASHOUT flag should be N.
WARNING -Flood Determination Number should be 10 (Pinnacle) or 11 (Flood Zones) characters
REMINDER: Please make sure that the Monthly Payment Amt matches the mo. pmt on the note.
Borrower/Coborrower FICO cannot be blank
WARNING-Loan amt is morethan 50k but Variance doesnt equal 5%
REMINDER: Verify Program Code and Caps to match Note Caps
WARNING-Verify Program Code
```

> We believe now that the broker may have "fudged" information on the documents to "fix" these problems.



Auditor Signature        Funding Manager Signature

MGC 0636

*CHECKER RESULTS...*

NING-Debt Ratio Cannot be greater than 50
c Pmt Adj Date should be 6, 24, or 36 mo. greater than 1st Pmt Date

Auditor Signature

Funding Manager Signature

MGC 0637

OCT-19-2000  19:03   MES HOME LOAN   9725943782  P.21/21

Loan #:TX014446
Customer: SAMUEL G. BREITLING

Date: October 19, 2000

## Section 1

### 1) Calculate The Prepaid Finance Charges:

| Fees To One Stop | | Fees To Broker | | Other Fees | |
|---|---|---|---|---|---|
| Points: | % | Points: | 3.00 % 3,888.00 | All Fees paid to Broker-Owned Escrow CO.: | |
| Underwriting: | | Processing: | | | |
| Appraisal Review: | | | | Escrow /Settlement / Attorney Fee: | |
| Funding: | | Application: | | | |
| Flood Certificate: | | Administration: | | Sub-Escrow Fee: | |
| Tax Service: | | Courier: | | Title Company / Wire Transfer Fee: | |
| Prepaid Interest: | 311.85 | Other: | | | |
| Other: | | | | | |
| | | **Total Prepaid Finance Charges:** | | 4,199.85 | |

### 2) Subtract Prepaid Finance Charges From Loan Amount-This Is Your Amount Financed  (As Shown on Federal TIL Disc):

| Loan Amount | | Prepaid Finance Charges | | Amount Financed |
|---|---|---|---|---|
| 129,600.00 | − | 4,199.85 | = | 125,400.15 |

### 3) Calculate the '4 (C) 7 Charges' (Fees paid by the borrower to the lender and/or broker that are not included in the prepaid finance charges, excluding reasonable 3rd party charges):

| | | |
|---|---|---|
| Appraisal Fee: | | Notary: |
| Credit Report Fee: | | Appraisal or Pest/Inspection Fee: |
| Survey: | | |
| | Total '4 (C) 7 Charges': | |

### 4) Calculate The Total Points And Fees:

| Prepaid Finance Charges | | Prepaid Interest | | '4 (C) 7 Charges' | | Total Points and Fees |
|---|---|---|---|---|---|---|
| 4,199.85 | − | 311.85 | + | | = | 3,888.00 |

### 5) Divide Total Points And Fees By Amount Financed And Multiply By 100:

| Total Points And Fees | | Amount Financed | | | | Final Percentage |
|---|---|---|---|---|---|---|
| 3,888.00 | ÷ | 125,400.15 | X | 100 | = | 3.1005 |

### 6) Is The Percentage Above In Line 5 Greater Than 7.99%?   NO

## Section 2

| | |
|---|---|
| 1) Date Loan Application Received By One Stop: | 10/17/00 |
| 2) Treasury Indexes For The 15th Day Of the Month Prior To Date Of Application in (LINE 1) Above: (Use Lower of 10/20 year if 15 year term, use 30 year for 30 year term): | 5.90 |
| 3) Section-32 Trigger Rate: (LINE 2) + (10%): | 15.90 |
| 4) Annual Percentage Rate As Listed On The Federal Truth In Lending Disclosure: | 13.17 |
| 5) Is The A.P.R. (LINE 4) Greater Than The Section-32 Trigger Rate in (LINE 3): | NO |

**Section-32 Determination:**

Sec32 = NO

This Loan passed the 8% and the 10% test.

Therefore, it is NOT a Section-32 high cost mortgage.

No Signatures

| | | |
|---|---|---|
| **Prepared And Reviewed By:** | | Date: |
| **Reviewed Prior To Funding By:** | | Date: |

TOTAL P.21

MGC 0638

## 1st Home Mortgage
### 1710 Promenade Center Richardson, TX 75080
### Phone- (972)671-5363    Fax- (972)6717227

OCTOBER 18, 2000

I have talked with the client and she said that she got out of CCCS in May 2000, as they were hurting her credit by not paying on time.  Also  we qualified her including her student loans.  And I have circled on the Benefit Statement that her benefits are thru 2007.

Thank You,

*Frances Christensen*

Frances Christensen
Processor

$3\ 7$

#37
ok VB
10/18/00

MGC 0568

OCT-18-2000  12:31                 97%              P.02

## TRUTH IN LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| 1st HOME MORTGAGE<br>1710 PROMENADE CENTER<br>RICHARDSON, TX 76080 | Borrowers:<br>JoAnn Breitling<br>Samuel Breitling | Property Address:<br>1704 Cornwall<br>Sachs, TX 75048 |
|---|---|---|

| Date: | 10/01/2000 | ☐ Preliminary ☐ Final<br>(e) means Estimate | Loan NO.:<br>Type of Loan: Conventional, 3 Yr Arm<br>Rate / Term: 12.800% / 360 months |
|---|---|---|---|

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you assuming the annual percentage rate does not change. | Amount Financed<br>This amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
|---|---|---|---|
| 10.949% | $272,613.87 | $125,481.60 | $398,095.47 |

**PAYMENT SCHEDULE:**

| Number of Payment | Amount of Payments | | Payments are Due Beginning | Number of Payment | Amount of Payments | | Payments are Due Beginning |
|---|---|---|---|---|---|---|---|
| | P & I | Mortgage Insurance | | | P & I | Mortgage Insurance | |
| 1–36 | $1,413.40 | $0.00 | | | | | |
| 37–72 | $1,216.53 | $0.00 | | | | | |
| 73–359 | $1,053.55 | $0.00 | | | | | |
| –360 | $1,049.14 | $0.00 | | | | | |

**DEMAND FEATURE:** ☐ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
☐ This Loan has a Variable Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 1704 Cornwall, Sachs, TX 75048
☐ Collateral securing other loans with us may also secure this loan.
☐ Your deposit accounts and other rights you may have to the payment of money from us.

**ASSUMPTION:** Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $

**PROPERTY INSURANCE:** ☐ Property hazard insurance in the amount of with a loss payable clause is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☐ is not available through the lender at an estimated cost of $0.00 for a year term.

**LATE CHARGES:** If your payment is more than days late, you will be charged a late charge of % of the over due payment.

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.

**PREPAYMENT:** If you pay off your loan early, you
☐ may ☐ will not have to pay a penalty.
☐ may ☐ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

No Signatures

| _____<br>BORROWER / DATE | _____<br>BORROWER / DATE |
|---|---|
| _____<br>BORROWER / DATE | _____<br>BORROWER / DATE |

Byte Enterprises, Inc. 1-800-695-1008 (222)

MGC 0558

## TRUTH IN LENDING DISCLOSURE STATEMENT

### AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

Final disclosure based on closing terms.

Date:     10/20/00
Loan No:  9825282
Borrower: SAMUEL G. BREITLING AND JO ANN BREITLING
Property: 1704 CORNWALL LANE, SACHSE, TEXAS  75048

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | |
| 13.045% | $379,851.93 | $125,400.15 | $505,252.08 | |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | Payments are Due Monthly, Beginning |
|---|---|---|
| 36 | 1,370.61 | 12/01/00 |
| 324 | 1,407.13 | 12/01/03 |

DEMAND FEATURE:  This obligation does not have a demand feature.

VARIABLE RATE FEATURE:  Your loan contains a variable-rate feature.  Disclosures about the variable-rate feature have been provided to you earlier.

SECURITY:  You are giving a security interest in the above referenced property.

ASSUMPTION:  Someone buying this property cannot assume the remaining balance due under the original terms.

PROPERTY INSURANCE:  You may obtain property insurance from anyone you want that is acceptable to Lender.

FILING FEES:  $34.00

LATE CHARGES:  If your payment is more than 10 days late, you will be charged a late charge of 10.00% of the payment.

PREPAYMENT:  If you pay off your loan early, you will not have to pay a penalty and you will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding nonpayment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

The payment amounts listed in the payment schedule include amounts for principal, interest, and any mortgage insurance, but do not include monthly escrow deposits for hazard and/or flood insurance, taxes or assessments.

I acknowledge receipt of the fully completed Truth in Lending Disclosure Statement.

Date: October 20, 2000

*Samuel D. Breitling by Jo Ann Breitling* ........(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-in-Fact —Borrower

*Jo Ann Breitling* ........(Seal)
JO ANN BREITLING —Borrower

Why are our signatures completely separated
from the contract and/or the documents we are
supposedly acknowledging with our signatures?
None of the Truth in Lending Disclosure
Statement pages contain our signatures, and we
never received them, so we were never given
proper legal disclosure under the Truth in
Lending Act. A judicial determination was
already made as to this fact by Judge Tanya
Parker in the 116th District Court, case #
DC-11-07087.

MGC 0560

App. No.

Loan No.

Lender: AAMES FUNDING CORP, A CALIFORNIA CORPORATION, DBA AAMES HOME
LOAN

Applicant(s): Samuel + Joann Breitling          Date: 10·1·00

Property Address: 1704 Cornwall Lane
Sachse, TX. 75048

## "NOTICE CONCERNING EXTENSIONS OF CREDIT

DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE
SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS
EQUITY LOANS, IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE
LOAN, THE LENDER MAY FORECLOSURE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES
THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF
YOUR HOME AND EACH OWNER'S SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN
AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST
YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND
YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL
FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN
AMOUNT;'

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO
TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY AGRICULTURAL HOMESTEAD PROPERTY, UNLESS
THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY
BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON
ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6) ARTICLE XVI, OF THE TEXAS
CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED
THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOUR SUBMIT A WRITTEN
APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE,
WHICHEVER DATE IS LATER; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN
WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE

MGC 0608

TOTAL P.03

App. No.

Loan No.

Aames Home Loans was a "straw lender" in this transaction, raising questions about whether it meets criteria to be considered a "lawfully authorized lender".

BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT THAT IS NOT SECURED BY YOUR HOME OR TO ANOTHER DEBT TO THE SAME LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF ALL DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS."[7]

By signing below, you acknowledge that you have received a copy of this NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(A)(6), ARTICLE XVI, TEXAS CONSTITUTION.

| Applicant | 10-1-00 Date | Applicant | 10-1-00 Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

MGC 0609



¹ Section 50(a)(6) provides that the owner or owner's spouse consent cannot be required...

# Aames

## FEE CALCULATION FOR TEXAS OWNER-OCCUPIED, CASH-OUT REFI'S

Loan #: _____  $ 129,600 (loan amount) x 3% = $ 3888 (a)
Aames + title    Broker

**BROKER FEE**                                                   3888

**APPRAISAL FEE**

RT

FEE

0 •    NG FEE (Broker Only)

150·0000  + ROP FEE
60·0000  + Patterson fee)              150   125.00
1,217·0000  + TION FEE
150·0000  +
73·0000  + FEE                          60.00
19·0000  +

006

1,671·0000  + FEE                       150.00

NCE FEE (see chart)
1,671·0000  ÷
129,600·  = FEE                         75   65.00
0·0128  x
FICATE                                  19   35.00

129,600·  x
3·  %
3,888·0000  + R FEES

1671  (b)                               3888

0·C

1.29  %                                 3  %

ER THAN (a) REFER BACK TO BRANCH

MGC 0610

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND<br>JO ANN BREITLING, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§ | NO. 3:15-CV-00703-B |
| LNV CORPORATION, ET AL., | §<br>§<br>§ | MOTION TO VACATE<br>JUDGE TILLERY'S VOID |
| Defendants. | §<br>§ | ORDER |

AFFIDAVIT OF ANNIE BREITLING IN SUPPORT OF PLAINTIFFS' MOTION TO
VACATE JUDGE TILLERY'S VOID ORDER

Come now Plaintiffs, Samuel G. and JoAnn S. Breitling, self represented, and incorporate herein their other pleadings in this case and their related cases and submit this sworn Affidavit in support of their motion to vacate Tillery's void order issued on August 4, 2014 granting Defendant LNV Corporation ("LNV") summary judgment in *LNV Corporation v. Breitlings et al*, Case# DC-14-04053 in the Dallas County District Court in the 134th Judicial District. Affiant Annie Breitling was present for the non-judicial foreclosure sale of Plaintiffs property n the 29th day after the said void order was issued to LNV; which violated the automatic stay Plaintiffs invoked pursuant to Texas Rule of Civil Procedure 736.11 by filing *Breitlings v. LNV Corporation et al*, Case# DC-14-09604 in the 101st Dallas County District Court.

Respectfully Submitted,

JoAnn Breitling

Samuel G. Breitling

200I236  05436

# FILED

2000 DEC -6  AM II: 57

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

Any provision herein which restricts the sale, rental, or use of the
described real property because of color or race is invalid and
unenforceable under federal law.           COUNTY OF DALLAS
STATE OF TEXAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by m.s.

DEC   6   2000



COUNTY CLERK, Dallas County, Texas

OCT-24-2000 11:00    AAMES HOME LOAN                9725543782   P.06/09

Recording requested by and Return
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

**REDACTED**

Dam ID:        05-2
Loan No:                                        1520052
Borrower: SAMUEL G. BREITLING                09/06/01  2A33008    $11.00
                                              Deed

## ASSIGNMENT OF
## SECURITY INSTRUMENT

Date:   OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
        AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A
        Corporation which is organized and existing under the laws of the State of CALIFORNIA

Assignee:
        AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION
        350 S. GRAND AVE. 42ND FLOOR
        LOS ANGELES, CA 90071

Security Instrument is described as follows:
        Date:              OCTOBER 20, 2000
        Original Amount:   $129,600.00
        Borrower:          SAMUEL G. BREITLING AND WIFE, JO ANN BREITLING
        Lender:            AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES
                           HOME LOAN
        Trustee:           MICHAEL L. RIDDLE
        Deed of Trust Recorded or Filed on   12-06-00
        As Instrument/Document No.   1219743
        In Book   216   , Page   05437
        Of Official Records in the County Recorder's or Clerk's Office DALLAS COUNTY, TEXAS.

Property (including any improvements) Subject to Lien:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever.

When the context requires, singular nouns and pronouns include the plural.

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officer(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as many be required.

Seal)

        K. BRANSOM
     Commission # 1211863
     Notary Public - California
        Orange County
   My Comm. Expires Feb 27, 2003

                                        AAMES FUNDING CORPORATION, A CALIFORNIA
                                        CORPORATION, DBA AAMES HOME LOAN

                                        By:

                        Amy Brackett
                                        (Printed Name and Title)

State of CALIFORNIA                     **Assistant Secretary**
County of ORANGE

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
**Amy Brackett, Assistant Secretary** Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A Corporation which is
organized and existing under the laws of the State of CALIFORNIA, and that (s)he executed the same as the act of such entity for
the purposes and consideration therein expressed, and in the capacity therein stated.
                                              OCT 2 6 2000
        GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____ , 20 ____ .

My commission expires: _____

                                        Notary Public in and for CALIFORNIA

# K. Bransom

# EXHIBIT "C"

OCT-24-2000  11:01          AAMES HOME LOAN                9725543782   P.07/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 568 of the Map Records of Dallas County, Texas.

2001 174 01318

2001 176 01319

FILED

2001 SEP -5 PM 12: 29

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



Any provision herein which restricts the sale, rental, or use of the
described real property because of color or race is invalid and
unenforceable under federal law.

STATE OF TEXAS                    COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

SEP 6 2001

COUNTY CLERK, Dallas County, Texas

OCT-24-2000 11:21    AAMES HOME LOAN                    9725543782   P.08/09

Data ID:

Loan No.:

Borrower: SAMUEL G. BREITLING                          REDACTED

## ASSIGNMENT OF
## SECURITY INSTRUMENT                                 1520053

                                                       09/06/01  2833009    $11.00
                                                       Deed

Date:   OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
    AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

Assignee (including Mailing Address):

Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage
Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2, C/O Countrywide Home Loans
SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93085

Security Instrument is described as follows:
    Date:               OCTOBER 20, 2000
    Original Amount:    $129,600.00
    Borrower:           SAMUEL L. BREITLING AND WIFE, JO ANN BREITLING
    Lender:             AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES
                        HOME LOAN
    Trustee:            MICHAEL L. RIDDLE
    Deed of Trust Recorded in the Official Records in the County Recorder's or Clerk's Office of DALLAS County, TEXAS,

Property (including any improvements) Subject to Lien:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever. Recorded 12-06-00

                                                    Inst. 1219743
When the context requires, singular nouns and pronouns include the plural.    Book 236 Page 05431

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officer(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as may be required.

(Seal)                                          AAMES CAPITAL CORPORATION, A CALIFORNIA
                                                CORPORATION
            
            K. BRANSOM                          By:
            Commission # 1211863                         (Printed Name and Title)
            Notary Public - California
            Orange County                       Amy Brackett
            My Comm. Expires Feb 27, 2003
                                                Assistant Secretary

State of   CALIFORNIA
County of  ORANGE

    BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
Amy Brackett, Assistant Secretary, Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
CAPITAL CORPORATION, A CALIFORNIA CORPORATION, and that (s)he executed the same as the act of such entity for the
purposes and consideration therein expressed, and in the capacity therein stated.
                                                       OCT 2 6 2000
    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 20____.

My commission expires: _____                _____
                                                   Notary Public in and for CALIFORNIA

# K. Bransom

# EXHIBIT "D"

2001 174 01320

OCT-24-2000  11:01          BAMES HOME LOAN                    9725543782    P.09/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 668 of the Map Records of Dallas County, Texas.

TOTAL P.09

2001174 01321

2001174 01322 ●

FILED

2001 SEP -5 PM 12: 29

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



Any provision herein which restricts the sale, rental, or use of the
described real property, because of color or race is invalid and
unenforceable under federal law.
STATE OF TEXAS                          COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

SEP  6  2001

*Earl Bullock*

COUNTY CLERK, Dallas County, Texas

 AL  20080173631

3 PGS

REDACTED

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
**BC:** ▮▮▮▮▮

**Assignor:**   Deutsche Bank National Trust Company, As Trustee
FKA Bankers Trust Company of California, N.A. As Trustee
1761 East St. Andrew Place, Santa Ana, California 92705

**Assignee:**   Ellington Mortgage Partner, L.P.
53 Forest Avenue, Suite 301, Greenwich, CT 00687

**Property Address : 8908 Forest creek Drive, Tomball, Texas 77375**

<u>Subsequent Recording:</u>

**See page 2 for Mortgage recording information**

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on March 5, 2001,  Instrument No U908898, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on August 24, 2001,  Instrument No V260630, here in.

# EXHIBIT "F"

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC·

**ASSIGNMENT OF DEED OF TRUST**

**FOR VALUE RECEIVED:**
ASSIGNOR:                    **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**
                             **FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE**

ASSIGNOR ADDRESS:            **1761 EAST ST. ANDREW PLACE**
                             **SANTA ANA, CA 92705**

**DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:**
ASSIGNEE:                    **ELLINGTON MORTGAGE PARTNERS, L.P**

ASSIGNEE'S ADDRESS:          **53 FOREST AVE. STE. 301**
                             **GREENWICH, CT 0687**

**ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:**

DATED:                       **10/20/2000**
ORIGINAL LOAN AMOUNT:        **$129,600.00**
TRUSTOR/BORROWER:            **SAMUEL G,BREITLING AND JO ANN BREITLING**    wife)
ORIGINAL BENEFICIARY:        **AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A**
                             **CALIFORNIA CORPORATION**
TRUSTEE:                     **MICHAEL L. RIDDLE**

**RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS**
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:    **1704 CORNWALL LANE**
                             **SACHSE, TEXAS 75048**
  See
Attached Exhibit "A" for Legal Description
**TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS**
**ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.**

                             DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE

                             BY:
                             NAME: CHRISTOPHER CORCORAN
                             TITLE:  VICE PRESIDENT

STATE OF **CA**
COUNTY OF **ORANGE**      ) SS:

ON _____ **3-31** _____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED CHRISTOPHER CORCORAN. VP , PERSONALLY KNOWN TO ME
(OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED
PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE DEUTSCHE BANK AND
ACKNOWLEDGED TO ME THAT SUCH _____ VP _____ EXECUTED THE WITHIN INSTRUMENT
PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON

> JEANNE STAFFORD
> Commission # 1729363
> Notary Public - California
> Orange County
> My Comm. Expires Mar 5, 2011

_____

**DO NOT GO BELOW THIS LINE**

TEXAS 11/99
                                                                         214

EXHIBIT "A"

REDACTED

BC: ▇▇▇▇▇

Legal Description:

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas County, Texas.

Prepared By & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
May 27, 2008  09:50:55 AM
FEE: $24.00      20080173631

REDACTED

This Document Prepared By and
After Recording Please Mail To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

  AL    20080320073

5 PGS

BC # ▮▮▮▮

## RE-RECORD ASSIGNMENT OF DEED OF TRUST TO INCLUDE
## TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT
## RECORDING INFORMATION

### (Recorded 12/06/00, Book 2000236. Page 05437, Instrument No. 1219743)

APN No:    n/a

Grantor:    ELLINGTON MORTGAGE PARTNERS, L.P.
            53 Forest Avenue, Suite 301, Greenwich, CT 06870

Grantee:    LNV Corporation
            7195 Dallas Parkway, Plano, Texas  75024

Property Address:    1704 Cornwall Lane, Sachse, Texas 75048

AL       2008017505z

3 PGS

**REDACTED**

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
BC: ████

**Assignor:**    Ellington Mortgage Partner, L.P.
53 Forest Avenue, Suite 301, Greenwich, CT 00687

**Assignee:**    LNV Corporation
7195 Dallas Parkway, Plano, Texas 75024

**Property Address :** 1704 Cornwall Lane, Sachse, Texas 75048

**Subsequent Recording:**

See page 2 for Mortgage recording information

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on September 6, 2001,  Instrument No 1520052, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on September 6, 2001,  Instrument No 1520053, here in.

Assigned to Deutsche Bank National Trustee Company f/k/a Bankers Trust Company of California, 1761 E. St. Andrews Place, Santa Ana, CA 92705 on_____, Book _____ Page _____, Instrument No_____, here in.

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC:

**ASSIGNMENT OF DEED OF TRUST**

**FOR VALUE RECEIVED:**
ASSIGNOR:                          ELLINGTON MORTGAGE PARTNERS, L.P

ASSIGNOR ADDRESS:         53 FOREST AVE. STE. 301
                                            GREENWICH, CT 06870

**DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:**
ASSIGNEE:
                                            LNV Corporation
                                            7195 Dallas Parkway
ASSIGNEE'S ADDRESS:       Plano, Texas 75024

**ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:**

DATED:                                10/20/2000
ORIGINAL LOAN AMOUNT:       $129,600.00
TRUSTOR/BORROWER:           SAMUEL G BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:        AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                                            CALIFORNIA CORPORATION
TRUSTEE:                             MICHAEL L. RIDDLE

**RECORDED IN** THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: **236** PAGE: **05425** DOCUMENT: **1219742**

PROPERTY SUBJECT TO LIEN:    1704 CORNWALL LANE
                                              SACHSE, TEXAS 75048
*See Attached Exhibit "A" for legal Description*
**TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.**

ELLINGTON MORTGAGE PARTNERS, L.P

BY:
NAME: KC WILSON
TITLE: ATTORNEY-IN-FACT

STATE OF **CA** ) SS:
COUNTY OF **ORANGE**

ON **3-21** , 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED KC WILSON ATTORNEY-IN-FACT PERSONALLY KNOWN TO ME (OR
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON
WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE LP AND ACKNOWLEDGED TO ME THAT
SUCH **ATTORNEY-IN-FACT** EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:                  3/5/11

JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 5, 2011

DO NOT GO BELOW THIS LINE

TEXAS 11/99

EXHIBIT "A"                                   REDACTED

BC: ▆▆▆▆

Legal Description:

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 688 of the Map Records of Dallas County, Texas.

Prepared By & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024



FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
May 27, 2008    09:50:55 AM
          FEE: $24.00

20080173632

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk

Dallas County  TEXAS

October 02, 2008  04:00:52 PM

FEE: $32.00          20080320073

## AFFIDAVIT OF ANNE MARIA BREITLING

I, Anne Maria Breitling, am over the age of 18 and I have lived in Dallas County all of my life. I have never been convicted of a crime. I am fully competent to make this affidavit in testimony of my personal knowledge and experience. I swear under the penalty of perjury and under the laws of Texas and the United States that my testimony herein is true and accurate.

I make this affidavit concerning the legal matter that my parents Samuel and JoAnn Breitling have been involved in with the Beal entities. My parents are senior citizens and I have a valid Power of Attorney to assist them with their affairs, and I have personal knowledge concerning the legal matter. I went with my father Samuel Breitling and I assisted him in the filing of a lis pendens last August in the Dallas County land records. The lis pendens was a notification that my parents home of 33 years was the subject of a lawsuit.

My mother JoAnn Breitling tried to contact someone on the morning of September 2, 2014 who could stop the illegal sale of their property, and I went to the auction to represent my parents and give the trustee a copy of the lawsuit and the lis pendens. I also arranged to meet WFAA investigative reporter Brett Shipp at the sale, and he was able to record it.

The auction was a very confusing and crowded event, and I had to make sure that I was in the right line. There was a man in front of me, and he told the trustee that he had filed bankruptcy, but he did not have the proper documents  The trustee was very polite and told him to go upstairs and that she would not sell his home. My parents had an automatic stay that was invoked immediately by the filing of an independent lawsuit under the Texas Rules of Civil Procedure 736.11. I thought that once I showed the copy of the lawsuit and the lis pendens, that the automatic stay would be honored.

However, as soon as I told the trustee (whose name I later learned was Shelley Ortolani) that I was there representing the property at 1704 Cornwall Lane, she immediately turned to the crowd and said very loudly "This property is for sale!" I turned around (while the camera man was filming) and I shouted to the crowd that the house was not for sale, that there was a lawsuit, and within seconds, Ms. Ortolani shouted that the house was sold to the lender, and in seconds, it was over.. My parents' house was the very first one to be sold, and then Ms. Ortolani announced that she was taking a break, and she turned around and made a phone call.

Brett Shipp asked her why she just sold a property that had an automatic stay, and she replied that she had been instructed to sell the house anyways. My parents were sued for eviction in January, 2015, even though they had a lawsuit in federal court against LNV.

The eviction trial was to be held on January 26th and I attended it with my mother JoAnn Breitling and my brother Matthew Breitling. It was held at the JP Court near downtown Garland. I helped my mother carry several large boxes of files. She had asked the clerks if she could file anything "for the record" because she was accustomed to filing pleadings and motions in both state and federal court, and there were several ladies seated at the windows of the JP court. They all just said

"Show your papers to the judge." While that seemed strange to my mother, neither she nor I had ever been to a JP court before.

The opposing attorneys, Luke Madole and Sammy Hooda, arrived for the hearing. They were accompanied by Locke Lord attorneys (from the federal court case), Jason Sanders and Marc Cabrera. Jason and Marc sat on the very back row of the court, and an unknown gentleman sat behind Luke Madole. Luke Madole handed my mother a white binder before the hearing started, and my mother handed Mr. Madole and Sammy Hooda several folders. I watched and I could see they became very agitated with some of the things they were reading. They were whispering to one another and my mother whispered to me that they were reading the arrest record of Bret Maloney, who did a sworn verification of the entire eviction.

Luke Madole stood up and he took charge of the hearing, and began to address the jury. I was helping my mother read the short bios provided by the court about the potential jurors. Garland is a very mixed community. At least two jurors were excused because they did not speak English. Potential juror number one was seated right behind my mother, and ironically, he was an attorney. He was the very first juror that Luke Madole struck. Luke Madole told the jurors that he would be using a lot of "loud language" that day and saying "I object!" a lot and he asked if anyone would be bothered by it. No juror responded. My mother had always thought that she wanted a jury of her peers but as she and I went down the list of prospective jurors, I know that my mother's heart sank, as did mine. We both realized we were there that day with a very complex case and as we were deciding what jurors to possibly keep, we wondered how a 23 year old unemployed gentleman could ever comprehend how the laws had been violated in my parents case.

Finally the jury was selected, and Luke Madole leaned forward to the judge and in a very low tone voice whispered to the judge "Remember the motion in limine." My mother and I both overheard him, and my mother asked the judge "What motion in limine?" Judge Gerry Cooper said nothing. Luke Madole said nothing. No one answered my mother's question. But, true to his word, Luke Madole DID object to everything JoAnn Breitling said. When she asked the judge to strike the verification of the eviction because Bret Maloney was not a credible witness to do such a verification, my mother was quickly rushed into chambers so that the jury could not hear anything else about Bret Maloney.

It was very frustrating and hurtful to me to watch my mother try to go through her documents and show the evidence to the jurors, with Luke Madole shouting "I object!" and Judge Gerry Cooper sustaining every objection. The unknown gentleman kept passing notes to Luke Madole, and at one point, Sammy Hooda began laughing out loud at my mother. She asked the judge why he was allowing such conduct, and the judge just smiled and said nothing to Mr. Hooda.

My father (who was ill that week and about to have a surgery) came into the back of the courtroom at the very end of the proceeding. He was very shocked to see Jason Sanders and Marc Cabrera on their cellphones on the back row of the court, even though there was a sign posted in huge letters that there was a $200 fine for the use of cell phones in the court.

The jury deliberated for a very short time and came back and the verdict favored LNV. My father saw one of the jurors in the hall, and he asked him "Why did you rule that way?" The juror said that all that they were told they could "consider" was that LNV bought the house at foreclosure, my parents were now tenants in sufferance, and they had refused to move. Nothing else was even "in" evidence. My mother took my father to the Medical District in Houston several days after the eviction trial. My daughter was picking up mail from the house and it was several days after the trial that a notice of a certified letter was left. My daughter went and picked it up, and it was a copy of LNV's "Motion in Limine, Motion to Exclude." It had been filed with the JP court three days before the Monday hearing.

They should have given my mother a copy of it at the hearing, but they did not. There was not an order attached, My mother called the JP court and she specifically asked if Judge Gerry Cooper had signed an order granting it, and she was told he did not, however, he went along with it.

I, Anne Maria Breitling do swear under God and under penalty of perjury and under the laws of Texas that my testimony herein is true and accurate.

_Anne Maria Breitling_

Anne Maria Breitling
972-658-3915


State of Texas County of ___Dallas___
Before me, ___Kimberly Samples___, on this day personally appeared
___Anne Marie Breitling___ known to me (or proved to me on the oath of
___TX DL___ or through (description of identity card or other document)
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office this ___25___ day of ___July___ (year), _2015_

(Personalized Seal)                              Notary Public's Signature


KIMBERLY J SAMPLES
My Commission Expires
March 20, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND | § | |
| JO ANN BREITLING, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | NO. 3:15-CV-00703-B |
| | § | |
| LNV CORPORATION, ET AL., | § | MOTION TO VACATE |
| | § | JUDGE TILLERY'S VOID |
| Defendants. | § | ORDER |
| | § | |

AFFIDAVIT OF WADE KRICKEN IN SUPORT OF PLAINTIFFS' MOTION TO VACATE
JUDGE TILLERY'S VOID ORDER

Come now Plaintiffs, Samuel G. and JoAnn S. Breitling, who are self represented and

incorporate herein their pleadings in the following directly related cases:

1. *LNV Corporation v. Breitlings et al*, Civil Cause DC-14-04053 in the Dallas County
   District Court in the 134th Judicial District, filed on April 15, 2014

2. *Breitlings v. LNV Corporation et al*, Civil Cause DC-14-09604 in the Dallas County
   District Court in the 101st Judicial District, filed on August 29

3. *Breitling et al. v. LNV Corporation et al.*, Civil Action No. 3:14-cv-3322-M (first
   removal by Beal entities to this U.S. District Court, heard by Judge Barbara Lynn)

4. *LNV Corporation v. Breitlings et al*, Civil Cause No. JD15-00071C in the Justice of the
   Peace Court Number 2 in Garland Texas, Judge Gerry Cooper

5. *LNV Corporation v. Breitlings et al*, Civil Cause No. CC-15-00911-C in the County
   Courts at Law Number 3 in Dallas County, Judge Sally Montgomery

6. *LNV Corporation v. Breitlings et al*, Civil Cause No. 05-15-0677-CV in the Court of
   Appeals for the Fifth District of Texas at Dallas, filed on or around May 27, 2015

7. *Breitling et al. v. LNV Corporation et al.*, Civil Action No. 3:15-cv-00703-B (second
   removal by Beal entities) U.S. District Court, now heard by Judge Jane Boyle.

Plaintiffs submit to this court the affidavit of attorney Wade Kricken who was present in

behalf of Plaintiffs for a May 8, 2015 hearing in the County Court of Law before Judge Sally

Montgomery and therefore has personal knowledge of what happened at this hearing.  This

hearing was scheduled because Plaintiffs appealed the eviction order issued by Judge Gerry Cooper in the Garland, Texas J.P. Court on January 26, 2015. (Defendant LNV's eviction complaint heard by Cooper was filed as a result of a void order issued by Dale B. Tillery on August 4, 2014.) Pursuant to Texas Rule 506.1(h) of Civil Procedure Plaintiffs were supposed to be given a "trial de novo" meaning a new trial as if the trial in the J.P. court had never happened.

This is not what happened. Sally Montgomery conducted no trial and made an immediate decision to give possession to LNV. As shown by the transcript of the hearing attached to the Affidavit of JoAnn Breitling in support of Plaintiffs' motion to vacate Tillery's void order she did so because she was "asked to." Her decision is in direct violation of Texas Rule 506.1(h) of Civil Procedures. Judges are not supposed to violate Texas Rules because they are asked to. LNV's Counsel Luke Madole is the person who asked her to; and he contributed heavily to her judicial campaign. It is unconstitutional, and may be considered criminal, for a judge to make a ruling based on personal gain (political financial contributions resulted in Sally Montgomery winning a position as a judge with considerable authority over the lives of individual Texans brought before her, and such a position could/should be considered a personal gain.) Therefore the unconstitutional and void order of Tillery has resulted in further violations of Plaintiffs' constitutional rights to due process and equal protection of the law; and to further damages to Plaintiffs.

Respectfully Submitted,

JoAnn Breitling                    Samuel G. Breitling

STATE OF TEXAS            )
                         )
COUNTY OF DALLAS          )

## AFFIDAVIT OF WADE KRICKEN

I, Wade Kricken, am over the age of eighteen and am fully competent to make this affidavit. I have been licensed to practice law in the State of Texas since 2002 and have not been convicted of a crime involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct.

I was retained by Samuel G. and JoAnn Breitling to attend a hearing set for May 8, 2015, in the Dallas County Court at Law No. 3, Judge Sally Montgomery presiding. I have appeared in this Court and before Judge Montgomery many times in recent years.

Prior to the May 8, 2015 hearing, the Breitlings filed, *pro se*, a motion to abate the case in Judge Montgomery's court, pending the outcome of a case that was already pending in the Northern District of Texas Dallas Division, Judge Jane Boyle presiding, where they are the Plaintiffs and LNV Corporation is the Defendant.

In preparation for the May 8, 2015 hearing, I selected for presentment at the hearing seven cases with substantially similar procedural circumstances as the Breitlings' case(s), wherein Judge Montgomery agreed to abate the forcible detainer case pending the outcome of the litigation pending in district court concerning foreclosure of the subject property.

However, before commencement of the May 8, 2015, Judge Montgomery claimed that "hated these kinds of cases", and that "it's on them (LNV) and if there is a wrongful foreclosure and a wrongful eviction, then there are more damages". She further stated that she had "been asked not to abate this case."

Judge Montgomery inaccurately stated that she had never abated a case of this type with substantially similar facts and circumstances. On behalf of my clients, I respectfully informed the judge that she had in fact abated cases in similar circumstances – that I was attorney of record in one such case. Judge Montgomery clarified her prior statement, adding that she had abated cases in the past when the parties agreed to the abatement. Once again, I respectfully disagreed with her pointing out that I had never had an opposing party agree to motion to abate that I had filed on behalf of a client.

After a brief recess, Judge Montgomery called the case to trial. However, she stated that she was ruling in favor of LNV Corporation, granting them immediate possession of the subject property, subject to appeal. I do not recall that Plaintiff's

attorney(s) had to formally enter evidence into the record or otherwise prove their client's case.

During the hearing, Judge Montgomery elicited information from Luke Madole, attorney for LNV Corporation that was factually inaccurate. For example, Mr. Madole informed the Court that the Breitlings' foreclosure was a "judicial" foreclosure. My client informed me that this was not correct. Judge Montgomery opined that the Breitlings had received "more due process" than most other cases she had seen.

Further Affiant Sayeth Not.

Wade Kricken

SWORN TO and SUBSCRIBED before me the undersigned Notary Public by Wade Kricken on this the 4th day of August, 2015.

CHRISTINA WILSON
Notary Public
STATE OF TEXAS
My Comm. Exp. July 8, 2017

Notary Public in and for the State of Texas