MOTION FOR ENBANC REVIEW OF PETITION FOR WRIT OF MANDAMUS

Case No. 15-35963

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE: DENISE SUBRAMANIAM

DENISE SUBRAMANIAM
Defendant – Petitioner
v.
LNV CORPORATION
Plaintiff – Respondent

Gabrielle D. Richards
Respondent

UNITED STATES DISTRICT COURT for the
District of Oregon Portland Division
Respondent

Judge Michael W. Mosman
Respondent

From the United States District Court
District of Oregon Portland Division
Judge Michael W. Mosman Presiding
Case No. 3:14-cv-01836

MOTION FOR ENBANC REVIEW PURSUANT TO FRAP RULE 35 OF EMERGENCY PETITION FOR WRIT OF MANDAMUS CIRCUIT RULE 27-5 PURSUANT TO 18 U.S.C. § 3771(D)(3)

Denise Subramaniam
c/o 1905 SE 24th Ave
Portland OR 97214
503-764-5300

Pro se Petitioner

Gabrielle D. Richards
Martin & Richards, LLP
111 SW Fifth Ave, Suite 3150
Portland, OR 97204
503-444-3449
Fax: 503-296-5834
Email: gabby@cascadialawyers.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

Erick J. Haynie
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2017
Fax: 503-727-2222
Email: ehaynie@perkinscoie.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation


Jeffrey M. Peterson
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2075
Email: jeffreypeterson@perkinscoie.com
ATTORNEY TO BE NOTICED

Counsel for LNV Corporation

## APPELLANT'S MOTION FOR ENBANC REVIEW OF HER EMERGANCY PETITION FOR WRIT OF MANDAMUS

Comes now Appellant/Petitioner, hereafter referred to as "Ms. Subramaniam" and moves this Ninth Circuit Court of Appeals for En Banc Review of her Emergency Writ of Mandamus by as full a panel of judges as possible.

The panel decision conflicts with a May 20, 2016 decision by this court reversing a district court summary decision and remanding. See <u>Gieseke v. Bank of America, N.A. et al</u>, No. 14-16651 D.C. No. 3:13-cv-04772-JST, Northern District of California, San Francisco (May 20, 2016). This court made its decision in light of <u>Yvanova v. New Century Mortgage Corporation,</u>

*Supreme Court of California, No. S218973, Filed February 18, 2016.* In its one page order the court wrote:

> "On May 2, 2016, the court ordered the parties to show cause why the district court's judgment should not be summarily reversed and remanded for reconsideration in light of the California Supreme Court's decision in *Yvanova v. New Century Mort. Corp.*, 62 Cal. 4th 919 (Feb. 18, 2016).
>
> The parties have responded, and, following consideration of the responses, as well as the record on appeal, we REVERSE the district court's judgment and REMAND for reconsideration in light of *Yvanova*. See also *Keshtgar v. U.S. Bank*, 201 Cal. Rptr. 3d 253 (Apr. 27, 2016)."

In addition to *Yvanova* and *Keshtgar* in another recent 22 page decision filed on May 18, 2016 and certified for publication the Court of Appeal, Fourth Appellate District Division One State of Californian in Sciarratta v. U.S. Bank reversed and remanded under authority of *Yvanova*. The court stated:

> "The potential consequences of wrongfully evicting homeowners are too severe to allow such a result. (See *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 410 (*Miles*).)"

Also in <u>David Newman v. Bank of New York Mellon, et al</u> the Court of Appeals for the Ninth Circuit, Case No. 13-17297, D.C. No. 1:12-cv-01629-AWIGSA this court stated in its May 13, 2016 order reversing in part and remanding in part:

> "The district court dismissed Newman's claims for declaratory relief, quasi contract, violations of the Fair Debt Collection Practices Act, violations of California Business & Professions Code section 17200, and accounting because the court determined that a borrower like Newman has no standing to challenge a foreclosing entity's legal authority to foreclose. But while this appeal was pending, the California Supreme Court decided *Yvanova v. New Century Mortgage Corp.*, 365 P.3d 845 (Cal. 2016), which clarified that borrowers *do* have standing to challenge a foreclosing entity's authority to foreclose once the foreclosure has occurred. *Id*. at 860–61. And it appears that Newman's home was recently foreclosed on, bringing him within the class of people who have standing to bring these kind of claims. We therefore reverse the district court's dismissal of these claims for the district court to apply intervening California case law in the first instance."

In the present case Ms. Subramaniam has been foreclosed upon by a party who lacks standing to foreclose and evicted from her home of nearly 20 years that provided specific accommodation for her disabilities; and because such accommodation is not readily available in the housing market she has been reduced to living in her jeep since around February 10, 2016 after a Sheriff's sale of her home on January 29, 2016 based on the district court's summary decision favoring LNV in spite of obvious indications that LNV's purported "original" and genuine note and deed of trust were forgeries; and when she had never been served notice of the county/state sale and eviction action due to Appellee/Respondent LNV Corporation's (hereafter referred to as LNV) Counsel Gabrielle Richard's intentional exploitation of specific symptoms of Ms. Subramaniam's disabilities known to her.

Ms. Subramaniam has not only been wrongfully deprived of her property she has been deprived of her life quality and her liberty. A few examples of this deprivation: when outside temperatures reach 80 degrees and higher she must endure unbearable heat inside her jeep that prevents her from getting adequate sleep; she has no liberty to prepare food that meets her dietary needs and restrictions due to allergies and other health problems; hhe has no liberty to even go to the bathroom when necessary and has developed hemorrhoids as a result; and her body is bruised and battered because LNV and its Counsel put her personal property into storage units far from the one she rented and she has had to empty them herself with occasional help from friends.

The purpose of mandamus is to remedy defects of justice. The panel decision that denied Ms. Subramaniam's Emergency Wirt of Mandamus construed it as a motion for injunctive relief; which it was not. The panel referenced <u>Winter v. Nat. Res. Def. Council, Inc.</u>, *555 U.S. 7, 20 (2008)* for its authority. The present case is not similar to *Winter* where the United States

Supreme Court overturned a Ninth Circuit Court of Appeals decision upholding the district court's decision to grant injunctive relief to stop Naval training exercises based on the possible negative environmental impact of those exercises. The Supreme Court held in a 5-4 decision authored by Chief Justice John G. Roberts that the standard for properly granting a preliminary injunction is not based on the "possibility" of irreparable harm to marine life, but rather that "irreparable injury is likely" in the absence of such an injunction. The present case is not about the "possibility" of irreparable harm; it is about very real and imminent danger of irreparable harm being caused to Ms. Subramaniam and to her property that will defile its ability to accommodate her disabilities. No amount of monetary award alone will ever compensate for the damages caused to her. Ms. Subramaniam if her Emergency Writ of Mandamus is not granted. She has little to be joyful about in her life. Her twin grand daughters are a primary source of joy in her life. Her daughter and husband just bought a house only a mile away from Ms. Subramaniam's home. Her home is located near hospitals and other services she needs. It will be impossible for her to find another home that will accommodate her disabilities and be located near her family and the medical services she needs.

The longer Ms. Subramaniam is deprived of possession of her property, her home since 1998, and LNV and its agents have possession, the greater to potential that LNV will cause irreparable damage to her home. The harm already done to her body and to her health will worsen the longer she is forced to continue to live in her jeep. This is not a conclusion in the realm of "possibility" it is bona fide fact and Ms. Subramaniam will supply a declaration from her doctor to support her motion for en banc review and her writ of mandamus.

The proceedings in the present case involve one or more constitutional questions of exceptional importance. Ms. Subramaniam is not the only victim of wrongful foreclosure by LNV, in fact

the foreclosure cases for two other LNV victims are now on appeal in this very court of appeals; *LNV Corporation v. Robynne A. Fauley* and *LNV v. Corporation v. Kelly Randle and Fred Mitchell*. LNV victims Samuel and JoAnn Breitling are on appeal in the Fifth Circuit Court of Appeals, *Breitlings v. LNV Corporation et al*. There are dozens more in the lower state courts and in federal district courts. Every one of these cases involves foreclosures perfected by LNV when LNV had no standing to foreclose.

Furthermore the LNV victims claim their cases are related and interwoven. In this court's 31 page order in yet another similar case to the present one where this court reversed in part and remanded that was filed on June 12, 2014 in *Re: MERS* Case: 11-17615 an Appeal from the United States District Court for the District of Arizona this court states:

> "The panel reversed the district court's dismissal of Count I, seeking relief based on violations of Arizona's false documents statute when the defendants allegedly filed false notices of trustee sale, notices of substitution of trustee, and assignments of deed of trust. The plaintiffs alleged that these documents were notarized in blank and 'robosigned' with forged signatures. *Id* at 5… Writing in 2011, the MDL Court dismissed Count I on four grounds. None of these grounds provides an appropriate basis for dismissal. We recognize that at the time of its decision, the MDL Court had plausible arguments under Arizona law in support of three of these grounds. But decisions by Arizona courts after 2011 have made clear that the MDL Court was incorrect in relying on them…
>
> Third, the MDL Court held that appellants lacked standing to sue under § 33-420 on the ground that, even if the documents were false, appellants were still obligated to repay their loans. In the view of the MDL Court, because appellants were in default they suffered no concrete and particularized injury. However, on virtually identical allegations, the Arizona Court of Appeals held to the contrary in Stauffer. The plaintiffs in Stauffer were defaulting residential homeowners who brought suit for damages under § 33-420(A) and to clear title under § 33-420(B). One of the grounds on which the documents were alleged to be false was that "the same person executed the Notice of Trustee Sale and the Notice of Breach, but because the signatures did not look the same, the signature of the Notice of Trustee Sale was possibly forged." Stauffer, 308 P.3d at 1175 n.2. The trial court dismissed on the pleadings. The Arizona Court of Appeals reversed the dismissal under both §§ 33-420(A) and (B). It wrote:
>
>> Appellees argue that the Stauffers do not have standing because the Recorded Documents have not caused them any injury, they have not disputed their own default, and the Property has not been sold pursuant to the Recorded Documents. The purpose of A.R.S. § 33-420 is to "protect property owners from actions

> clouding title to their property." We find that the recording of false or fraudulent documents that assert an interest in a property may cloud the property's title; in this case, the Stauffers, as owners of the Property, have alleged that they have suffered a distinct and palpable injury as a result of those clouds on their Property's title.

Id. at 1179 (citation omitted).

The Court of Appeals not only held that the Stauffers had standing based on their "distinct and palpable injury." It also held that they had stated claims under §§ 33-420(A) and (B). The court held that because the "Recorded Documents assert[ed] an interest in the Property," the trial court had improperly dismissed the Stauffers' damages claim under § 33-420(A). Id. at 1178. It then held that because the Stauffers had properly brought an action for damages under § 33-420(A), they could join an action to clear title of the allegedly false documents under § 33-420(B). The court wrote:

> The third sentence in subsection B states that an owner "may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section." A.R.S. § 33-420.B. Therefore, we find that an action to clear title of a false or fraudulent document that asserts an interest in real property may be joined with an action for damages under § 33-420.A.

*Id.* We therefore conclude, based on Stauffer, that appellants have standing to sue.

Fourth, the MDL Court held that appellants had not pleaded their robosigning claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 8(a). We disagree. Section 33-420 characterizes as false, and therefore actionable, a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid." Ariz. Rev. Stat. §§ 33-420(A), (B) (emphasis added). The CAC alleges that the documents at issue are invalid because they are "robosigned (forged)." The CAC specifically identifies numerous allegedly forged documents. For example, the CAC alleges that notice of the trustee's sale of the property of Thomas and Laurie Bilyea was "notarized in blank prior to being signed on behalf of Michael A. Bosco, and the party that is represented to have signed the document, Michael A. Bosco, did not sign the document, and the party that did sign the document had no personal knowledge of any of the facts set forth in the notice." Further, the CAC alleges that the document substituting a trustee under the deed of trust for the property of Nicholas DeBaggis "was notarized in blank prior to being signed on behalf of U.S. Bank National Association, and the party that is represented to have signed the document, Mark S. Bosco, did not sign the document." Still further, the CAC also alleges that Jim Montes, who purportedly signed the substitution of trustee for the property of Milan Stejic had, on the same day, "signed and recorded, with differing signatures, numerous Substitutions of Trustee in the Maricopa County Recorder's Office . . . . Many of the signatures appear visibly different than one another." These and similar allegations in the CAC "plausibly suggest an entitlement to relief," Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009), and provide the defendants fair notice as to the nature of appellants' claims against them, Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

We therefore reverse the MDL Court's dismissal of Count I."

The present case involves false, forged and robo-signed assignments of deed of trust, substitution of trustee, notices of default, allonges to notes and even an obvious forged and falsified note and deed of trust submitted to the district court as the genuine "original" instruments; and Ms. Subramaniam's Emergency Writ of Mandamus includes sufficient particularity as per these forged instruments.

Also in *Re: MERS* this court states:

> "There has been a wave of litigation in state and federal courts challenging various aspects of the MERS System. Almost all of the relevant law is state rather than federal. The results under state law have been inconsistent. *See* Weber, *supra*, at 246–56 (cataloguing the "schizophrenic position of state courts" on issues relating to the MERS System)."

In this case, and its sister cases Ms. Subramaniam and several of the other LNV fraudulent foreclosure victims have been directly discriminated against by judges because they are pro se litigants and members of protected classes. The fact that they are pro se litigants is a direct consequence of their being members of a protected class recognized as being economically disadvantaged. Ms. Subramaniam and the others raise constitutional questions of exceptional importance specific to the Rule 56 summary judgments and Rule 12 summary dismissals because they create an environment where judges feel free to enforce their own personal biases against disadvantaged pro se litigants in foreclosure cases; this may be a reason for the "schizophrenic position of state courts" but federal district courts are not much better. A review of this case and its sister cases shows a definitive judicial bias against pro se homeowner litigants in case challenging a foreclosing party's standing to foreclose. Judges appear to not even read their pleadings and take as gospel truth any utterance of an opposing counsel and make their decisions, typically summary dismissals or judgments based solely on the pleadings of such opposing counsel with total disregard for the merits of the pro se litigant's case.

A civil right is an enforceable right or privilege, which if interfered with by another gives rise to an action for injury. Examples of civil rights are freedom of speech, press, and assembly; the right to vote; freedom from involuntary servitude; and the right to equality in public places. Discrimination occurs when the civil rights of an individual are denied or interfered with because of their membership in a particular group or class.

The most important expansions of civil rights in the United States occurred as a result of the enactment of the Thirteenth and Fourteenth Amendments of the U.S. Constitution. The Thirteenth Amendment abolished slavery throughout the United States. See U.S. Const. amend. XIII. In response to the Thirteenth Amendment, various states enacted "black codes" intended to limit the civil rights of the newly free slaves. In 1868 the Fourteenth Amendment countered these "black codes" by stating that no state "shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States... [or] deprive any person of life, liberty, or property without due process of law, [or] deny to any person within its jurisdiction the equal protection of the laws." See U.S. Const. amend. XIV. Section Five of the Fourteenth Amendment gave Congress the power by section five of the Fourteenth Amendment to pass any laws needed to enforce the Amendment.

The judiciary, most notably the Supreme Court, plays a crucial role in interpreting the extent of the civil rights. The Constitution states only one command twice. The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words to describe the legal obligation of all states. These words have as their central promise an assurance that all levels government must operate within the law and provide fair procedures. The courts stretched Fourteenth Amendment "due process" to apply the Bill of Rights to states and the Fifth

Amendment "due process" to require the federal government to afford equal protection of the laws. The Equal Protection Clause of the Fourteenth Amendment forbids the states from establishing segregated schools or otherwise discriminating invidiously against some of their citizens. There is no equal protection clause in the Bill of Rights but in a case involving segregation in the schools of Washington, D.C. a federal enclave governed by federal law, the Supreme Court found that the Due Process Clause operates against the federal government just as the Equal Protection Clause does against the states.

Homelessness is an issue for every major city in the United States, Portland is no exception. The number one cause of the recent rise in homelessness is staring this court in the face with LNV's wrongful foreclosure using forged documents and with district court Judge Mosman's refusal to compel authentication of those documents when every reasonable person who has viewed them confirms they look highly suspect. Several recent articles have been published in Portland media about the homelessness problem. Portland's Mayor has been in the news because he recently instructed law enforcement to let homeless "campers" alone. Since becoming homeless herself Ms. Subramaniam has noticed numerous other people sleeping in their vehicles or in tents under bridges and along highways. Ms. Subramaniam was not the only person made homeless by LNV's wrongful foreclosure, Linnie Messina, her long time roommate was also made homeless.

Public interest is served by this court granting Ms. Subramaniam's motion for en banc review and by its granting of her Emergency Writ of Mandamus.

Respectfully Submitted,

/s/ Denise Subramaniam

## **CERTIFICATE OF SERVICE**

The above signed hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record and pro-se parties via the Court's CM/ECF system, email, and/or regular or certified mail at the addresses below:

Gabrielle D. Richards
Martin & Richards, LLP
111 SW Fifth Ave, Suite 3150
Portland, OR 97204
503-444-3449
Fax: 503-296-5834
Email: gabby@cascadialawyers.com


Jeff Peterson | Perkins Coie LLP
ASSOCIATE
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
D. +1.503.727.2075
F. +1.503.346.2075
E. JeffreyPeterson@perkinscoie.com

Erick Haynie | Perkins Coie LLP
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
D. +1.503.727.2017
F. +1.503.346.2017
E. EHaynie@perkinscoie.com